**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number: 2020-NMSC-011**

**Filing Date: June 25, 2020**

**No. S-1-SC-36932**

**CONSOLIDATED WITH**

**No. S-1-SC-36933**

**STATE OF NEW MEXICO,**

        Plaintiff-Respondent/Cross-Petitioner,

v.

**RICHARD J. SENA,**

        Defendant-Petitioner/Cross-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Stephen K. Quinn, District Judge**

Released for Publication September 8, 2020.

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Petitioner/Cross-Respondent

Hector H. Balderas, Attorney General
Marko David Hananel, Assistant Attorney General
Santa Fe, NM

for Respondent/Cross-Petitioner

## OPINION

**VIGIL, Justice.**

**{1}**    A jury found Defendant guilty of one count of each of the following crimes: criminal sexual penetration (CSP) in the first degree in violation of NMSA 1978, Section 30-9-11(D)(2) (2009); kidnapping in the first degree in violation of NMSA 1978, Section

30-4-1 (2003); armed robbery in violation of NMSA 1978, Section 30-16-2 (1973); aggravated burglary in violation of NMSA 1978, Section 30-16-4(C) (1963); and criminal sexual contact (CSC) in violation of NMSA 1978, Section 30-9-12(C)(3) (2003). In addition, Defendant entered a no contest plea to being a felon in possession of a firearm in violation of NMSA 1978, Section 30-7-16 (2001, amended 2018, 2019), and admitted to being a habitual offender and subject to an enhanced sentence. Defendant was sentenced to the New Mexico Department of Corrections for a total of forty years and six months. Defendant appealed to the Court of Appeals. *State v. Sena*, 2018-NMCA-037, 419 P.3d 1240, *cert. granted*, 2018-NMCERT-___ (S-1-SC-36932, May 25, 2018).

{2}     In the Court of Appeals, Defendant asserted the following errors: (1) the district court failed to grant a mistrial when Defendant did not testify, and the prosecutor in closing arguments argued that Defendant's demeanor during Victim's trial testimony was evidence of Defendant's guilt, (2) the instruction on kidnapping was erroneous in failing to require a finding that the restraint used during the kidnapping was not merely incidental to another crime, (3) Defendant's convictions of both aggravated burglary and CSP and CSC were double jeopardy violations, (4) the State failed to present sufficient evidence to support the convictions of CSP and kidnapping, and (5) the district court abused its discretion by admitting the results of DNA testing into evidence. *See id.* ¶¶ 1, 7, 20, 26, 27, 32, 34, 51.

{3}     In a formal opinion the Court of Appeals (1) rejected Defendant's argument that the district court erred in denying his motion for a mistrial, (2) held that the omission of incidental restraint in the instruction on kidnapping constituted fundamental error, and (3) held that Defendant's convictions of aggravated burglary, CSP, and CSC were double jeopardy violations. *See id.* ¶¶ 7-19, 20-25, 34-48. The Court of Appeals also determined that the State presented sufficient evidence to support the convictions of CSP and kidnapping and that the district court did not err in admitting the results of DNA testing into evidence. *See id.* ¶¶ 26-33, 49-55.

{4}     We granted the petitions for certiorari filed by Defendant and the State to review the foregoing conclusions. We hold that the Court of Appeals (1) erred in affirming the district court order denying Defendant's motion for a mistrial, (2) erred in reversing Defendant's kidnapping conviction for fundamental error on grounds that the elements instruction did not address incidental restraint, (3) erred in concluding that Defendant's convictions for aggravated burglary, CSP, and CSC violated double jeopardy, and (4) correctly held that the State presented substantial evidence  to support Defendant's convictions for CSP and kidnapping. Because we remand for a new trial, it is not necessary, and we decline to address, whether the district court erred in admitting the results of DNA testing into evidence.

## A.     BACKGROUND

{5}     Victim, who lived alone and was in her seventies, awoke at 3:30 a.m. to Defendant's gloved hand over her mouth and a knife to her head. When Victim tried to

scream, Defendant told her to stop and threatened to kill her. Defendant then ordered Victim out of bed and demanded she undress. As Victim undressed, Defendant asked Victim where her purse was, and Victim replied that it was in the closet. Defendant took Victim's wallet containing thirty dollars.

{6} Victim told Defendant that she needed to use the restroom. Defendant allowed Victim to go to the restroom while he watched and began masturbating. After she finished using the restroom, Defendant ordered Victim back to bed, telling her to lie face down on a pillow. Defendant got on top of Victim and penetrated Victim's vagina and anus with his penis. After a few minutes, Defendant instructed Victim to get on her knees and continued penetrating Victim's vagina and anus with his penis. Defendant then told Victim to turn over, at which point he began fondling Victim's breasts and digitally penetrating Victim's vagina.

{7} After the sexual assaults, Defendant asked Victim about a rifle leaning against the bedroom wall. Defendant proceeded to leave the bedroom, and after waiting a few minutes, Victim attempted to inch out of bed. Defendant, who was watching Victim from the living room, ordered Victim back into bed. After waiting awhile longer, Victim got out of bed and entered the living room where she found her front door wide open. Victim discovered that her wallet and rifle were missing, as were the cordless telephones from the living room and Victim's bedroom. Victim also noticed an open sliding window in the dining room. Victim closed the front door, locked it, and called police.

{8} Police arrived shortly thereafter, discovering shoe prints directly below the open sliding window. Police tracked the shoe prints to the residence of Defendant's stepmother and stepfather, where Defendant was hiding wearing socks but no shoes. Inside the residence, police collected a pair of sneakers consistent with the shoe print found at Victim's home. Police also followed tire tread tracks to a Honda parked outside the residence, which was identified as belonging to Defendant. After obtaining a search warrant for the Honda, police found leather gloves, a rifle, and a large knife. The gloves were consistent with the description that Victim provided. Victim also identified the rifle as the one stolen by Defendant and the knife as the one used during the incident.

{9} Following the incident, Victim was examined by a sexual assault nurse examiner (SANE). The examination revealed a half centimeter "open area" consistent with force on Victim's vagina. The SANE obtained various swabs from both Victim and Defendant for DNA testing, including a swab of Victim's left, upper thigh and a swab of Defendant's lower abdomen. No semen was detected on any of the swabs that were tested, but Victim's DNA was detected on Defendant's hands.

{10} We now address the issues raised by Defendant and the State in their respective petitions for certiorari.

## B. DISCUSSION

### 1. The Prosecutor's Arguments During Closing Arguments

**{11}** The Court of Appeals held that "commenting on the demeanor of a non-testifying defendant is improper, as it is neither probative of innocence or guilt, nor is it evidence that an appellate court can properly review." *Sena*, 2018-NMCA-037, ¶ 12. We agree with this holding. However, the Court of Appeals erred in concluding that the prosecutor's arguments in this case "did not invade a distinct constitutional protection" and did not deprive Defendant of a fair trial. *Id.* ¶¶ 18, 19 (internal quotation marks and citation omitted). For the reasons that follow, we reverse and remand for a new trial.

**{12}** While the prosecutor was making her closing arguments, the following exchanges took place.

OPEN COURT

Prosecutor:

> Did you notice, also, ladies and gentlemen, when she [Victim] testified, that man [Defendant] wouldn't even look at her. He watched every other witness on the stand.

Defense Counsel:

> Objection, your honor. There's no evidence of that. May I approach the bench?

Prosecutor:

> Judge, this is . . . (unintelligible)

SIDEBAR CONFERENCE

Defense Counsel:

> That's commenting on his silence. He's not testifying. What he did or didn't do is not in the record at all. We object and, strongly object to her reference of what——against his presumption of innocence. He didn't testify. There was absolutely no evidence. That's done to inflame. We move for a mistrial.

Prosecutor:

> Judge, that is not . . . (unintelligible)

Defense Counsel:

> No one testified to that.

Prosecutor:

> (unintelligible)

Defense Counsel:

> No one testified to that.

Court:

> The jury's just going to have to rely on their own memories of what they observed. And she's not commenting on his silence, she's just commenting on what he did. So, objection is overruled.

OPEN COURT

Court:

> Objection is overruled. The jury will have to rely on their own memories as to what they observed (unintelligible).

Prosecutor:

> Did you watch him in the courtroom when she took the stand? He wouldn't even look at her. He looked at every other witness in the eye, but he wouldn't look at her. And why wouldn't he look at her? Because he knew what he'd done. He knew what he did.

**{13}** Defendant contends that the Court of Appeals erred when it held that while the prosecutor's arguments were improper, they were not prejudicial. Defendant asserts that the district court erred because the prosecutor's arguments were not only improper but were prejudicial and contributed to Defendant's convictions.

**{14}** The State concedes that the prosecutor's arguments were improper because they "elevated [Defendant's] courtroom demeanor to the status of evidence and encouraged the jury to treat it as evidence of guilt." However, the State contends the Court of Appeals correctly held that the comments were not prejudicial because "Defendant's right to have his guilt or innocence determined solely on the basis of the evidence introduced at trial" does not "transform any reference to matters not in evidence into a Fifth Amendment violation." (Internal quotation marks and citations omitted.) We disagree and reverse the Court of Appeals.

**a.     Standard of review**

**{15}** We review a district court's denial of a motion for mistrial under an abuse of discretion standard. *State v. Johnson*, 2010-NMSC-016, ¶ 49, 148 N.M. 50, 229 P.3d 523. "We will find an abuse of discretion if a court's ruling is clearly untenable or contrary to logic and reason. Additionally, a court abuses its discretion if it applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law." *Freeman v. Fairchild*, 2018-NMSC-023, ¶ 29, 416 P.3d 264 (internal quotation marks and citations omitted). *See also N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450 (stating that a decision premised on a misapprehension of the law may be characterized as an abuse of discretion). In addressing Defendant's arguments that raise questions of constitutional law, which we review de novo, *see State v. DeGraff*, 2006-NMSC-011, ¶ 6, 139 N.M. 211, 131 P.3d 61 (holding that this Court reviews questions of constitutional law de novo), we ask whether the district court applied the wrong legal standard in denying Defendant's motion for mistrial.

**b. The prosecutor's arguments resulted in reversible error**

**{16}** In *State v. Sosa*, we identified three factors to consider when reviewing error in closing arguments: "(1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense." 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348.

**{17}** Considering the first factor, we are more likely to conclude that there is reversible error when the prosecutor's comments invade "a distinct constitutional protection." *Id.* ¶ 27. The prosecutor's comments in this case implicated Defendant's Fifth Amendment right to silence and thus, invaded a "distinct constitutional protection."

**{18}** The Fifth Amendment to the United States Constitution establishes a sacrosanct constitutional right in its direction that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. The Bill of Rights of the New Mexico Constitution likewise directs, "No person shall be compelled to testify against himself in a criminal proceeding[.]" N.M. Const. art. II, § 15. When a prosecutor makes a comment that invites the jury to draw an adverse conclusion from a defendant's failure to testify, the defendant's Fifth Amendment privilege is violated. *DeGraff*, 2006-NMSC-011, ¶ 8 (citing *Griffin v. California*, 380 U.S. 609, 614 (1965)). Such remarks compromise a defendant's right to a fair trial and result in fundamental error. *State v. Rojo*, 1999-NMSC-001, ¶ 55, 126 N.M. 438, 971 P.2d 829.

**{19}** Prosecutor comments on a defendant's right not to testify may be direct or indirect. *State v. Rice*, 573 S.W.3d 53, 75 (Mo. 2019) (en banc). A direct comment explicitly refers to the fact that the defendant did not testify, whereas an indirect comment is "one reasonably apt to direct the jury's attention to the defendant's failure to testify." *Id.* (internal quotation marks and citation omitted). Both direct and indirect comments on a defendant's failure to testify are forbidden. *See State v. Clark*, 1989-NMSC-010, ¶ 48, 108 N.M. 288, 772 P.2d 322, *disapproved of on other grounds by*

*State v. Henderson*, 1990-NMSC-030, ¶ 38, 109 N.M. 655, 789 P.2d 603. Thus, all prosecutorial arguments drawing the jury's attention to the fact that it has not heard from the defendant during trial because the defendant has exercised his constitutional right not to testify are impermissible and violate the defendant's right against self-incrimination. *See Rice*, 573 S.W.3d 53, 74 (holding that once a defendant has invoked the right to remain silent, "*any* reference to [that] silence is improper" (emphasis in original)).

{20}   In her closing argument, the prosecutor asked the jury, "Did you watch [Defendant] in the courtroom when [Victim] took the stand? He wouldn't even look at her. He looked at every other witness in the eye, but he wouldn't look at her." The argument had no purpose other than to invite the jury to draw an adverse conclusion from Defendant's failure to get on the stand and explain why he would not look at Victim as she testified. After Defendant objected, the jury heard the district court overrule the objection, which placed the "stamp of judicial approval" on the improper argument, further magnifying the prejudice. *See Boulden v. State*, 787 S.W.2d 150, 153 (Tex. Ct. App. 1990) (internal quotation marks and citation omitted) ("[W]here a trial court overrules an objection to improper argument, it places 'the stamp of judicial approval' on the argument, magnifying the harm." (citation omitted)). Having obtained the district court's stamp of judicial approval, the prosecutor compounded the prejudice by repeating the statement and adding, "And why wouldn't he look at her? Because he knew what he'd done. He knew what he did." We would be remiss if we did not add that the closing arguments were recorded and we have the benefit of knowing not only what words the prosecutor spoke but her tone as well. The prosecutor's accusatory tone was tantamount to pointing a finger at Defendant.

{21}   "Closing argument is an aspect of a fair trial which is implicit in the Due Process Clause of the Fourteenth Amendment by which the States are bound." *Hughes v. State*, 437 A.2d 559, 568 (Del. 1981) (internal quotation marks and citation omitted). A prosecutor's arguments during summation regarding a  nontestifying defendant's courtroom demeanor are irrelevant as it is not evidence that is in the record and therefore is beyond the scope of summation. *Id.* at 572. "Moreover, the practice is pregnant with potential prejudice. A guilty verdict must be based upon the evidence and the reasonable inferences therefrom, not on an irrational response which may be triggered if the prosecution unfairly strikes an emotion in the jury." *Id.*

{22}   Reference to a nontestifying defendant's courtroom demeanor is not merely a reference to something not in evidence, it is an attack on a defendant's Fifth Amendment right not to testify. *United States v. Carroll*, 678 F.2d 1208, 1209 (4th Cir. 1982). In *United States v. Schuler*, 813 F.2d 978, 979 (9th Cir. 1987), the prosecutor commented that the defendant laughed as witnesses testified. The *Schuler* court determined that such comments by a prosecutor "tend to eviscerate the right to remain silent by forcing the defendant to take the stand in reaction to or in contemplation of the prosecutor's comments." *Id.* at 982. Even drawing subtle attention to a defendant's failure to testify is not permissible. *United States v. Rodriguez*, 627 F.2d 110, 112 (7th Cir. 1980). In *Rodriguez*, the prosecutor commented that the defendant was "very quiet

at the end of counsel table." *Id.* at 111. The *Rodriguez* Court counseled that "[t]he remarks, harmless or not, infringing upon such a basic and elementary constitutional underpinning of our justice system, simply should not occur." *Id.* at 113.

**{23}** *Dickinson v. State*, 685 S.W.2d 320 (Tex. Crim. App. 1984) (en banc), applied these principles. Commenting on the defendant's courtroom manner, the prosecutor stated, "And you know, another pretty important [piece of] evidence that you can consider is what you've observed in this courtroom. The demeanor in this courtroom of this man right here. You know, when [the complainant] was led into that courtroom she hid her face. She hid her face in shame." *Id.* at 325 (second alteration in original). The prosecutor added, "You haven't seen one iota of remorse, one iota of shame." *Id.* The *Dickinson* Court concluded that these were not comments on the defendant's demeanor but indirect comments on the defendant's failure to testify, characterizing the comments as a "transparent attempt to call the jury's attention to the appellant's invocation of his right to remain silent." *Id.* at 324-25.

**{24}** The principles were reiterated in *Coyle v. State*, 693 S.W.2d 743 (Tex. App. 1985), when the prosecutor stated, "I want to talk about what he [the defendant] looks like in the courtroom right now. You've looked at him throughout the trial——and that's all I'm talking about, just his actions here in this courtroom while you've watched him." *Id.* at 743. Applying *Dickinson*, the *Coyle* Court held that the prosecutor's comments "amounted to directing the jury's attention to the failure of the appellant to testify[.]" *Id.* at 744-45 (internal quotation marks and citation omitted).

**{25}** *Dickinson* and *Coyle* are highly persuasive. The prosecutor's arguments in this case were a direct comment on Defendant's exercise of his constitutional right not to testify and were highly improper. The prosecutor's arguments directly asked the jury to draw adverse conclusions from the fact that Defendant did not take the witness stand and explain himself. The district court applied an incorrect legal standard in construing the prosecutor's arguments as referring to Defendant's demeanor rather than his failure to testify.

**{26}** The second factor requires us to consider whether the prosecutor's comments were brief and isolated or repeated and pervasive. *Sosa*, 2009-NMSC-056, ¶ 29. The State asserts that while the argument was repeated, it was isolated and brief. It lasted twenty seconds within a twenty-minute closing argument, and it was not mentioned elsewhere at trial and was "certainly not pervasive."

**{27}** We are not persuaded. After hearing the prosecutor's improper argument, the jury heard the district court overrule Defendant's objection to the argument. "What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another." *Griffin*, 380 U.S. at 614. The prosecutor then took advantage of the ruling and repeated and embellished her improper argument, giving it additional emphasis. We once again remind prosecutors of what we said over fifty years ago:

The zeal, unrestrained by legal barriers, of some prosecuting attorneys, tempts them to an insistence upon the admission of incompetent evidence, or getting before the jury some extraneous fact supposed to be helpful in securing a verdict of guilty . . . . When the error is exposed on appeal, it is met by the stereotyped argument that it is not apparent it in any wise influenced the minds of the jury. The reply the law makes to such suggestion is: that, after injecting it into the case to influence the jury, the prosecutor ought not to be heard to say, after he has secured a conviction, it was harmless. As the appellate court has not insight into the deliberations of the jury room, the presumption is to be indulged, in favor of the liberty of the citizen, that whatever the prosecutor, against the protest of the defendant, has laid before the jury, helped to make up the weight of the prosecution which resulted in the verdict of guilty.

*State v. Rowell*, 1966-NMSC-231, ¶ 11, 77 N.M. 124, 419 P.2d 966 (quoting *Miller v. Territory of Oklahoma*, 149 F. 330, 339 (8th Cir. 1906)).

**{28}** Finally, we turn to the third factor—whether the error was invited by the defense. *Sosa*, 2009-NMSC-056, ¶ 26 . The State does not argue, and we decline to conclude, that Defendant somehow "opened the door" to the prosecutor's comments. All three *Sosa* factors support a conclusion of reversible error. We therefore proceed to the State's argument that no prejudice resulted.

**{29}** In the case of a constitutional error, "it is harmless only if the challenger can prove there is no reasonable possibility that the error affected the verdict." *State v. Thomas*, 2016-NMSC-024, ¶ 33, 376 P.3d 184 (quoting *State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110). "We must reverse a conviction if the erroneously admitted evidence might have contributed to it." *Thomas*, 2016-NMSC-024, ¶ 33. "[T]he existence of other evidence to support the verdict does not cure a constitutional error when there is a reasonable possibility that the erroneously admitted evidence influenced the jury's verdict." *Id.* ¶ 34. Although *Sosa* directs a finding of reversible error when "the prosecutors' comments materially altered the trial or likely confused the jury by distorting the evidence," *Sosa*, 2009-NMSC-056, ¶ 34, this case involves an intrusion on a "distinct constitutional protection." Applying a higher standard to reverse in the context of constitutional error would be in direct conflict with our jurisprudence. Thus, we apply *Sosa's* factors for guidance, but because we find constitutional error, we then apply a harmless error standard. The State has the burden to demonstrate that there was no reasonable possibility that the error affected the verdict.

**{30}** The State argues that the prosecutor did not explicitly mention Defendant's failure to testify or ask the jury to draw an adverse conclusion from that fact because the arguments did not suggest that Defendant failed to come forward with evidence or to correct misstatements to police before or after arrest. We disagree and conclude that the State has failed to meet its burden in demonstrating that there was "no reasonable possibility" that the comment on Defendant's right to silence affected the jury's verdict.

Therefore, we are left to presume the error indeed affected the verdict in this case and deprived Defendant of a fair trial.

**{31}** The prosecutor's arguments violated Defendant's Fifth and Fourteenth Amendment rights and deprived Defendant of a fair trial, resulting in reversible error. Prosecutors do not have license to make improper and prejudicial arguments with impunity. We reverse the Court of Appeals holding that Defendant received a fair trial, and we remand to the district court for a new trial.

## 2. Instruction on Kidnapping

**{32}** The Court of Appeals agreed with Defendant's argument that it was fundamental error not to include the incidental restraint limitation to kidnapping described in *State v. Trujillo*, 2012-NMCA-112, ¶ 39, 289 P.3d 238 in the essential elements instruction on kidnapping. *Sena*, 2018-NMCA-037, ¶¶ 22-25. We disagree with the Court of Appeals, and we reverse on this issue as well. Although we would not ordinarily address an issue pertaining to an instruction after reversing all of a defendant's convictions and remanding for a new trial, we do so in this case because the Court of Appeals reached a result we disagree with in a published, formal opinion.

**{33}** In *Trujillo*, the Court of Appeals held that "the Legislature did not intend to punish as kidnapping restraints that are merely incidental to another crime." 2012-NMCA-112, ¶ 39. In agreeing with Defendant's argument, the Court of Appeals reasoned that "omission of incidental restraint" from the instruction resulted in fundamental error in this case "as the jury could have convicted Defendant based upon a deficient understanding of the legal meaning of restraint as an essential element of kidnapping." *Sena*, 2018-NMCA-037, ¶ 25. We disagree because *Trujillo* does not apply to the facts of the case before us.

### a. Standard of review

**{34}** Our review is limited to determining whether the kidnapping instruction as given to the jury resulted in fundamental error because there was no objection to the instruction. *See State v. Sandoval*, 2011-NMSC-022, ¶ 13, 150 N.M. 224, 258 P.3d 1016 (stating that we review instructions for fundamental error instead of reversible error if the alleged error was not preserved in the district court). "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. In reviewing a failure to instruct for fundamental error, we "determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* ¶ 19. "[J]uror confusion or misdirection may stem . . . from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. In addition, "[f]undamental error occurs when jury instructions fail to inform the jurors that the State has the burden of proving an essential element of a crime and we are left with

'no way of knowing' whether the jury found that element beyond a reasonable doubt." *State v. Samora*, 2016-NMSC-031, ¶ 29, 387 P.3d 230 (citation omitted).

**b.      Omission of the incidental restraint limitation to kidnapping in the elements instruction was not fundamental error**

**{35}**    We begin with the statutory elements of kidnapping. Pertinent to the case before us, Section 30-4-1(A)(4) defines kidnapping as "the unlawful . . . restraining . . . or confining of a person, by force [or] intimidation . . . with intent . . . to inflict . . . a sexual offense on the victim." In accordance with UJI 14-403 NMRA (1997), the district court instructed the jury as follows:

> For you to find [D]efendant guilty of kidnapping . . . , the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.      [D]efendant restrained or confined [Victim] by force or intimidation;
>
> 2.      [D]efendant intended to inflict a sexual offense on [Victim];
>
> 3.      This happened in New Mexico on or about the 17th day of November, 2012.

This instruction correctly tracks the language of the statute, setting forth all the essential elements of kidnapping. Thus, the jury was properly instructed on every essential element of kidnapping. *State v. Martinez-Rodriguez*, 2001-NMSC-029, ¶ 38, 131 N.M. 47, 33 P.3d 267 (concluding that a kidnapping instruction which accurately tracked the language of the statute properly informed the jury of all the essential elements of the offense), *abrogated on other grounds as recognized by State v. Forbes*, 2005-NMSC-027, ¶ 6, 138 N.M. 264,119 P.3d 144.

**{36}**    In addition, the evidence fully supports the jury's verdict finding Defendant guilty of kidnapping under the instruction. As already described above, the evidence was that at approximately 3:30 a.m., Victim was awakened with a gloved hand over her mouth and a knife to her head. When Victim tried to scream, Defendant told her to stop and threatened to kill her. Defendant then ordered Victim to get out of bed and demanded that she undress. While Victim was undressing, Defendant took Victim's wallet. Victim said she needed to use the restroom and was permitted to walk to the restroom with Defendant following closely behind. Defendant then masturbated while Victim used the restroom. At this point, the crime of kidnapping was complete. Defendant had restrained Victim with the intent of inflicting a sexual offense on Victim. *See State v. McGuire*, 1990-NMSC-067, ¶ 10, 110 N.M. 304, 795 P.2d 996 ("Once [the] defendant restrained the victim with the requisite intent to hold her for service against her will, he had committed the crime of kidnapping, although the kidnapping continued throughout the course of [the] defendant's other crimes[.]"); *see also State v. Jacobs*, 2000-NMSC-026, ¶ 24, 129 N.M. 448, 10 P.3d 127 ("[T]he key to finding the restraint element in

kidnapping, separate from that involved in criminal sexual penetration, is to determine the point at which the physical association between the defendant and the victim was no longer voluntary.").

**{37}** The question presented here is whether *Trujillo*, 2012-NMCA-112, alters the foregoing conclusions. In *Trujillo*, the victim and his wife were awakened at around 2:30 a.m. by two men holding flashlights, who had broken into the home armed with metal bars or wooden bats. *Id.* ¶ 2. When the defendant started hitting the victim with a metal bar, the victim fought back and gained the upper hand, and while the victim was on top of the defendant hitting him, the defendant restrained the victim and called to his accomplice for help. *Id.* ¶¶ 2-3. The accomplice started hitting the victim, allowing the defendant to get free, and the two assailants continued to beat the victim before leaving. *Id.* ¶ 3. The entire incident lasted two to four minutes. *Id.*

**{38}** Convicted of both aggravated battery and kidnapping, in addition to other crimes, the defendant in *Trujillo* argued on appeal that "the Legislature did not intend to punish restraint incidental to an aggravated battery as kidnapping." *Id*. ¶ 6 (brackets omitted). In the factual context of the case, the Court of Appeals agreed with the defendant, concluding "that the restraint described by the testimony——a momentary grab in the middle of a fight——is as a matter of law insufficient to support a conviction for kidnapping." *Id.* The Court of Appeals was able to make this determination as a matter of law, recognizing that in a different factual scenario, a jury question might be presented as to whether the restraint relied upon to support a conviction for kidnapping was merely incidental to another crime. *See id.* ¶ 42.

**{39}** In the case before us, the Court of Appeals said that according to the evidence, Victim "was restrained both before and after the sexual offense occurred[.]" Under these circumstances, the Court of Appeals concluded that it was "for the jury to determine whether either or both of these restraints were slight, inconsequential, or incidental to the commission of the sexual offense." *Sena*, 2018-NMCA-037, ¶ 25. This conclusion was in error. Having already kidnapped Victim, Defendant then ordered Victim, who was still unclothed, to go back to the bed where he sexually assaulted her numerous times. Any restraint incidental to the sexual assaults was separate and distinct from the restraint that Defendant used to complete the kidnapping. These facts differ vastly from those in *Trujillo* and present no factual question for a jury to decide. *See* UJI 14-403, Use Note 8 (providing that the jury receives an instruction on incidental restraint "if the evidence raises a genuine issue of incidental conduct[.]"). *Trujillo* is inapplicable to the facts in this case.

**{40}** *Trujillo* was decided in 2012, before Defendant's trial in 2014. In partial response to *Trujillo*, UJI 14-403 was amended, but not until 2015. *See* UJI 14-403, Committee Commentary. Even if this version of the instruction had been in effect at the time of Defendant's trial, a finding consistent with UJI 14-403(4) on whether the restraint of Victim resulting in the kidnapping was "slight, inconsequential, or merely incidental" to the commission of another crime was not required in this case. *Id.* Submitting the question to the jury is only required "if the evidence raises a genuine issue of incidental

conduct[.]" UJI 14-403, Use Note 8. As we have already discussed, incidental restraint, as considered in *Trujillo*, was not at issue in this case.

**{41}**     The integrity of a criminal conviction in our judicial system requires a jury verdict to rest "on a legally adequate basis," and when it does not, the integrity of the judicial system is undermined, and fundamental error results. *State v. Mascareñas*, 2000-NMSC-017, ¶ 21, 129 N.M. 230, 4 P.3d 1221. Generally, therefore, "fundamental error occurs when the trial court fails to instruct the jury on an essential element." *State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72. In certain situations, a missing definitional instruction may be of "central importance to a fair trial" because without that instruction the jury verdict could be based on a deficient understanding of the legal meaning of an essential element. *Barber*, 2004-NMSC-019, ¶ 25. In other words, failing to instruct the jury on a definition or amplification of the elements of the crime may prevent the jury from making a "critical determination akin to a missing elements instruction." *Mascareñas*, 2000-NMSC-017, ¶ 20; *cf. State v. Stephens*, 1979-NMSC-076, ¶ 20, 93 N.M. 458, 601 P.2d 428 ("[T]he failure to instruct the jury on the definition or the amplification of the elements does not constitute error."), *overruled on other grounds by State v. Contreras*, 1995-NMSC-056, ¶ 19, 120 N.M. 486, 903 P.2d 228. Whether the restraint used to kidnap Victim was merely incidental to the sexual offenses was not a "critical determination" for the jury to make in this case, nor was it of "central importance" in arriving at a legally correct verdict. There was no fundamental error in failing to instruct the jury on the limitation to kidnapping identified in *Trujillo*. The Court of Appeals having ruled otherwise, we reverse the Court of Appeals on this point.

### 3.     Double Jeopardy

**{42}**     The Court of Appeals held that Defendant's separate convictions for aggravated burglary, CSP, and CSC violate the Fifth Amendment prohibition against double jeopardy because they result in multiple punishments for the same act. *See Sena*, 2018-NMCA-037, ¶¶ 34-45. The State contends that the Court of Appeals should be reversed because it misapplied the relevant precedent in arriving at its conclusion. Although we reverse for a new trial, we must address the Court of Appeals' flawed application of the *Foster* presumption. For the reasons explained below, we agree with the State and reverse the reasoning of Court of Appeals.

### a.     Standard of review

**{43}**     Appellate review of a claim that multiple punishments have been imposed for the same offense in violation of the Fifth Amendment prohibition against double jeopardy presents a question of law which we review de novo. *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747.

### b.     Analysis

**{44}**     The Fifth Amendment to the United States Constitution directs, in pertinent part, that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of

life or limb[.]" Defendant does not argue that the New Mexico Constitution affords greater rights than the Fifth Amendment, so we limit our review to the federal right, which is made applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794 (1969). One of the protections of the Fifth Amendment is the prohibition of "multiple punishments for the same offense." *Swafford v. State*, 1991-NMSC-043, ¶ 6, 112 N.M. 3, 810 P.2d 1223 (internal quotation marks omitted) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989)). Multiple punishment cases are of two types: those cases in which a defendant is charged with multiple violations of a single statute based on a single course of conduct ("unit of prosecution" cases) and those cases in which a defendant is charged with violating different statutes in a single course of conduct ("double-description" cases). *Swafford*, 1991-NMSC-043, ¶¶ 8-9.

**{45}**   Defendant argues that his convictions of aggravated burglary, CSP, and CSC violate his Fifth Amendment protection against double jeopardy because they arise from a single course of conduct. This is therefore a double-description case. In *Swafford*, this Court established a two-part analysis for deciding whether the same offense was committed in double-description cases. *Id.* ¶ 25. The first part focuses on the conduct and asks "whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates [multiple] statutes." *Id.* If the question is answered in the affirmative, we proceed to the second part, which focuses on the statutes at issue "to determine whether the legislature intended to create separately punishable offenses." *Id.* Double jeopardy protection prohibits multiple punishments in the same trial only when (1) the conduct is unitary and (2) it is determined that the Legislature did not intend multiple punishments. *Id.*

**{46}**   We first determine whether Defendant's conduct was unitary. When "sufficient indicia of distinctness" separate the illegal acts, the conduct is not unitary, and a defendant does not face conviction and punishment for "the same factual event." *Swafford*, 1991-NMSC-043, ¶¶ 26-28. "Sufficient indicia of distinctness" are present when the illegal acts "are sufficiently separated by either time or space (in the sense of physical distance between the places where the acts occurred)[.]" *Id.* ¶ 28. If these considerations do not suffice to make the determination, "resort must be had to the quality and nature of the acts or to the objects and results involved." *Id.* Thus, in determining whether there are such sufficient indicia of distinctness, we have also looked to the elements of the charged offenses, the facts presented at trial, and the instructions given to the jury. *Id.* ¶ 27 ("The conduct question depends to a large degree on the elements of the charged offenses and the facts presented at trial."); *DeGraff*, 2006-NMSC-011, ¶¶ 28-30 (considering the statutory definition of the crime, the instructions given to the jury, and the evidence presented at trial). Unitary conduct is not present when one crime is completed before another is committed, or when the force used to commit a crime is separate from the force used to commit another crime. *Id.* ¶¶ 27, 30.

**{47}**   In *State v. Foster*, 1999-NMSC-007, ¶ 28, 126 N.M. 646, 974 P.2d 140, *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381,

237 P.3d 683, this Court held that because we cannot assume that jurors will know how to reach a verdict without violating the Double Jeopardy Clause, "we must presume that a conviction under a general verdict requires reversal if the jury is instructed on an alternative basis for the conviction that would result in double jeopardy, and the record does not disclose whether the jury relied on this legally inadequate alternative." This presumption is based on the holding of *State v. Olguin*, 1995-NMSC-077, ¶ 2, 120 N.M. 740, 906 P.2d 731, that "a conviction under a general verdict must be reversed if one of the alternative bases of conviction is legally inadequate[.]" The parties agree that *Foster* provides the analytical framework for determining whether Defendant's acts were unitary but disagree on what the proper result is under *Foster*. We therefore examine *Foster* in some detail.

**{48}** In *Foster*, the Court considered in pertinent part whether convictions for first-degree felony murder, aggravated kidnapping, and armed robbery violated the Double Jeopardy Clause. 1999-NMSC-007, ¶ 1. The convictions resulted from the robbery and death of one victim. *Id.* ¶ 14. The victim was found in the den of her home on her stomach with a broken ashtray in front of the body and an electrical cord tied around her neck and ankles. *Id.* The ashtray was a heavy, faceted crystal ashtray with blood on it. *Id.* ¶ 19. There was a contusion around the victim's eye, several lacerations on her head, and a ligature mark on her neck. *Id.* ¶ 14. Deep lacerations found on the victim's head were caused by being hit with a heavy glass dish or ashtray, consistent with the broken ashtray at the scene. *Id.* The blows to the head could have rendered the victim unconscious. *Id.* ¶ 16. The bruising caused by the ligature was consistent with use of the extension cord and with the victim being alive when it was tightened around her neck. *Id.* ¶ 17. The chief medical investigator testified that the head injuries probably occurred first, rendering her unconscious, and that the victim was then tied up and strangled with the extension cord. *Id.* ¶ 18.

**{49}** Regarding the convictions for armed robbery and aggravated kidnapping, the State argued that the conduct underlying those offenses and the conduct underlying the murder was not unitary. *Id.* ¶ 26. Specifically, the State argued that the conduct in committing aggravated kidnapping was not unitary because the jury could have found that the kidnapping was committed by gaining entry to the victim's house by deception, and the conduct in committing armed robbery was not unitary because the stolen items were located in a room separate from where the victim was murdered. *Id.* ¶ 26. This argument relied "on the assumption that, when the jury instructions provide alternative bases for a conviction and there is no indication of which alternative the jury relied upon in reaching a general verdict, we may affirm the conviction if at least one of the alternatives does not violate the Double Jeopardy Clause." *Id.* ¶ 26. This Court rejected making this assumption, and in fact, as we have already stated, made the opposite presumption: that the convictions were based on an alternative in the jury instructions that would result in double jeopardy. *Id.* ¶ 28.

**{50}** Under that presumption, this Court in *Foster* assumed that the jury found that the aggravated kidnapping was committed by force. The instruction on the elements of aggravated kidnapping in *Foster* required the jury to find that the defendant acted with

force or deception and inflicted great bodily harm on the victim. *Id.* ¶ 29. The defendant argued that the conduct was therefore unitary because the same force used to commit the kidnapping was also used to commit the killing. *Id.* ¶¶ 29-30. This Court, however, rejected the defendant's argument. The state's theory on the kidnapping was that the defendant held the victim to rob her and to this end knocked her unconscious with the glass ashtray. *Id.* ¶ 31. As she lay unconscious, the defendant tied the victim up and strangled her to death with the electrical cord tied around her neck and ankles. *Id.* In other words, force was used two separate times, once to kidnap the victim to rob her and once to kill her. This conclusion was possible because under the instructions, the jury was required to find that in committing the aggravated kidnapping, the defendant inflicted great bodily harm. *Id.* ¶ 33. Thus, the kidnapping was completed when the defendant hit the victim on the head with the ashtray, causing the victim great bodily harm. *Id.* ¶¶ 32-33. This Court concluded there was sufficient indicia of distinctness when the defendant used force to hit the victim on the head with the ashtray, which completed the crime of aggravated kidnapping, *id.* ¶¶ 32-33, and then separately used force to strangle the victim with an extension cord. *Id.* ¶ 34.

{51}    In *Foster*, this Court separately addressed the defendant's armed robbery conviction. *Id.* ¶ 36. The jury instruction on armed robbery also allowed the jury to reach a guilty verdict under various alternatives. *Id.* Because the record did not demonstrate which alternative the jury relied on, and because the jury was allowed to find that the defendant committed armed robbery "while armed with a ligature," which was the same extension cord that was used to commit the murder, this Court applied the presumption that this was the alternative used by the jury. *Id.* ¶¶ 37-39. In addition, because the jury was allowed to find the defendant guilty of armed robbery by taking the victim's "car keys and/or a 1985 Crown Victoria and/or U.S. currency" and the record did not demonstrate which alternative was selected by the jury, this Court presumed that the armed robbery conviction was based on the defendant's taking of the property in closest proximity to the room where the victim was killed. *Id.* ¶¶ 36, 39. Applying the presumptions, the *Foster* court concluded that the defendant's conviction and sentence for armed robbery resulted from unitary conduct and violated the Double Jeopardy Clause. *Id.* ¶¶ 37-39. Because the instruction allowed the jury to find that the defendant committed armed robbery while armed with a ligature, but also, that the murder was committed by use of a ligature, the Court determined that the conduct was unitary. *Id.* ¶¶ 38-39.  The evidence presented at trial, the Court reasoned, did "not show a significant separation in time or physical distance between the armed robbery and the murder." *Id.* ¶ 39.

{52}    Here, the applicable instruction on aggravated burglary required the jury, in pertinent part, to find that Defendant entered Victim's dwelling without authorization and "was armed with a knife; OR . . . became armed with a firearm after entering; OR . . . touched or applied force to [Victim] in a rude or angry manner while entering or leaving, or while inside." The applicable instruction on CSP required the jury, in pertinent part, to find that Defendant inserted his finger into Victim's vagina and "used physical force or physical violence OR . . . used threats of physical force or physical violence against [Victim]." The instruction on CSC in turn required the jury, in pertinent part, to find that

Defendant "touched or applied force" to Victim's unclothed breast without Victim's consent. There is no way to determine which alternative(s) the jury relied on in finding Defendant guilty of aggravated burglary, CSP, and CSC.

**{53}** In arriving at its conclusion, the Court of Appeals applied the *Foster* presumption to assume not only that the jury relied on the battery alternative for each crime, but that the same conduct was also used to commit all three offenses. *Sena*, 2018-NMCA-037, ¶¶ 40-41. Having determined that Defendant's conduct was unitary based on a misapplication of the *Foster* presumption, the Court of Appeals went on to rule that under the modified *Blockburger* analysis set forth in *State v. Gutierrez*, 2011-NMSC-024, ¶¶ 58-59, 150 N.M. 232, 258 P.3d 1024, the Legislature did not intend multiple punishments for these offenses, and held Defendant was subjected to multiple convictions for the same offense in violation of double jeopardy. *Sena*, 2018-NMCA-037, ¶¶ 42-45.[1]

**{54}** Because it is indeterminate upon which alternative the jury relied, like the Court of Appeals, we apply the *Foster* presumption and presume the jury relied on the battery alternative in convicting Defendant of aggravated burglary, CSP, and CSC. However, contrary to the Court of Appeals' holding, *Foster* does not require a further presumption that the same conduct was then relied upon by the jury in convicting Defendant of each crime—particularly when the record indicates three distinct batteries were committed. Although the instructions allowed the jury to convict under the battery alternative for each crime, the *Foster* presumption is rebutted by evidence that each crime was completed before the other crime occurred.

**{55}** A battery was used to commit aggravated burglary when Victim was awakened at 3:30 a.m. with Defendant's gloved hand over her mouth and a knife to her head. After Victim got out of bed and was undressing as Defendant ordered, Defendant asked Victim where her purse was, and Victim replied that it was in the closet. Defendant took Victim's wallet containing thirty dollars. Victim was then allowed to go to the restroom while Defendant watched and began masturbating. After Victim finished using the restroom, Defendant ordered Victim back to bed, telling her to lie face down on a pillow. Victim testified that Defendant then penetrated Victim's vagina and anus with his penis, and after a few minutes, Defendant instructed Victim to get on her knees and continued penetrating Victim's vagina and anus with his penis. Defendant was not found guilty of these penetrations. However, Defendant then committed CSP and CSC by means of a second, and then a third battery when Defendant ordered Victim to turn over, and fondled Victim's breasts and digitally penetrated Victim's vagina.

**{56}** We therefore conclude that the Court of Appeals erred in its application of the *Foster* presumption. Although the instructions permitted the jury to convict Defendant of

---

1In its application of the modified *Blockburger* test, the Court of Appeals reasoned: "Because the State failed to provide any legal theory of the crime, and we have found none in the record, we conclude that Defendant's aggravated burglary conviction is subsumed by the CSP/CSC convictions[.]" *Sena*, 2018-NMCA-037, ¶ 45. In light of our conclusion that Defendant's conduct was not unitary, whether this is a correct application of the modified *Blockburger* test is not before us.

aggravated burglary, CSP, and CSC under the same alternative, the evidence demonstrates that the crimes were committed by three separate, identifiable batteries separated by sufficient indicia of distinctness. Thus, Defendant's conduct was not unitary. The initial battery and aggravated burglary were completed before the second battery and CSP, and these crimes were separated by both time and intervening events. *See DeGraff*, 2006-NMSC-011, ¶ 27 ("In our consideration of whether conduct is unitary, we have looked for an identifiable point at which one of the charged crimes had been completed and the other not yet committed."). In addition, Defendant's conduct in committing CSP and CSC was not unitary because the battery he used to commit the CSP was separate and distinct from the battery he used to commit CSC.

**{57}** Having concluded that Defendant's conduct in committing aggravated burglary, CSP, and CSC was not unitary, there was no double jeopardy violation. *Swick*, 2012-NMSC-018, ¶ 11. We therefore reverse the Court of Appeals' conclusion that Defendant's convictions for aggravated burglary, CSP, and CSC violate double jeopardy.

### 4.     Sufficiency of the Evidence

**{58}** Having reviewed the record and the arguments of the parties, we affirm the Court of Appeals' holding that the State presented sufficient evidence to support the convictions for CSP and kidnapping. *See Sena*, 2018-NMCA-037, ¶¶ 26-33, 49-55.

### C.     CONCLUSION

**{59}** We reverse Defendant's convictions and remand the case to the district court for a new trial consistent with this opinion.

**{60}   IT IS SO ORDERED.**

**MICHAEL E. VIGIL, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**BARBARA J. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**