IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2025-NMCA-024

Filing Date: November 18, 2024

No. A-1-CA-40146

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

TOMMIE JOE VALVERDE,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Douglas R. Driggers, District Court Judge

Raúl Torrez, Attorney General
Santa Fe, NM
Emily Bowen, Assistant Solicitor General
Albuquerque, NM

for Appellee

Harrison & Hart, LLC
Nicholas T. Hart
Albuquerque, NM

for Appellant

## OPINION

**HANISEE, Judge.**

**{1}**    Defendant Tommie Joe Valverde was convicted by a jury of committing the following sex crimes against his now ex-wife's granddaughter, I.A. (Victim): one count of criminal sexual penetration of a minor (CSPM), contrary to NMSA 1978, Section 30-9-11(D)(1) (2009); and four counts of criminal sexual contact of a minor (CSCM), contrary to NMSA 1978, Section 30-9-13(B)(1) (2003). All of Defendant's conduct underlying each charge occurred during two distinct periods of time, either between September 9

and September 24, 2017, or between August 12 and November 29, 2019.[1] For Defendant's conduct during the 2017 time period, Defendant was convicted of one count of CSPM and two counts of CSCM. For the subsequent 2019 period, Defendant was convicted of two counts of CSCM. On appeal, Defendant contends that two of his convictions of CSCM, one arising from each time period, violate his state and federal protections against being twice placed in jeopardy for the same offense because each assault constitutes one course of conduct for which only one CSCM conviction can be maintained. *See* N.M. Const. art. II, § 15; U.S. Const. amend. V. For the reasons set forth, we reverse in part and remand for resentencing in accordance with this opinion.

## BACKGROUND

**{2}**     At the time of the assaults in question, Victim was seven and nine years old. Because Defendant was married to Victim's grandmother, Victim would sometimes sleep at Defendant's house along with several of her siblings. Victim testified that on two of these occasions, Defendant came into the room where she was sleeping alone and touched her breasts, buttocks, and vulva. During the first such incident, occurring sometime between September 9 and September 24, 2017, Defendant opened the door to Victim's bedroom, entered her room, and touched her breasts, buttocks, and vulva with his hand underneath her clothes. The exact sequencing of the assault and Defendant's several attendant touches is not clear from the record, but it does appear that Defendant finished touching one part of Victim's body before touching another. At one point during the assault, Defendant penetrated Victim's vulva with his finger. Victim did not know how long the assault lasted, but she stated that she did not communicate with Defendant during the assault, Defendant did not say anything to her, and Victim did not remember if she moved or was moved throughout its duration.

**{3}**     Victim further testified to a second assault by Defendant, this time occurring sometime between August 12 and November 29, 2019. On the night of this incident, Victim was again staying at Defendant's house, and Defendant similarly entered the bedroom where Victim was alone and pretending to be asleep—a ruse she maintained because she had become used to Defendant's assaults. Defendant entered the room, approached Victim, and touched her breasts, buttocks, and vulva. As in the first incident, Defendant again touched each of Victim's body parts with his hand and on her skin underneath her clothing. Victim stated that she could not remember but she was "pretty sure" Defendant penetrated her on this occasion as well. Victim was nine years old at the time.

**{4}**     Shortly after the last assault, Victim's mother asked Victim if she had ever been inappropriately touched by anyone, and Victim told her mother about Defendant's conduct. Victim's mother then notified the police of the assaults, and Defendant was subsequently charged, tried, and convicted of the above-described offenses. For

---

[1]We note that the period of time during which one count of CSCM occurred was between August 12 and November 28, 2019, not November 29, 2019. Because this distinction is not material to resolution of this appeal and because November 29 encompasses November 28, we use the dates August 12 and November 29, 2019, to refer to this later period of time.

Defendant's conduct regarding the first charged assault in 2017, Defendant was convicted of one count of CSPM for digitally penetrating Victim and two counts of CSCM for touching both Victim's unclothed breasts and buttocks. For the second charged assault, occurring in 2019, Defendant was convicted of two counts of CSCM for touching Victim's unclothed breasts and vulva. Defendant appeals.

**DISCUSSION**

**{5}** Defendant argues that one count of CSCM from each assault must be vacated because each incident, despite consisting of separate contacts with different parts of Victim's body, constitutes a continuous course of conduct for which multiple convictions of CSCM violate his protections against multiple punishments for the same offense. Notably, Defendant does not argue that his convictions of CSCM from the first incident violate double jeopardy as to his conviction of CSPM.

**{6}** Both the state and federal constitutions protect a criminal defendant from being twice placed in jeopardy for the same offense. *See* N.M. Const. art. II, § 15; U.S. Const. amend. V. As such, "[a] double jeopardy challenge is a constitutional question of law which we review de novo." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. There are two types of double jeopardy cases: those in which the defendant has been convicted of violating multiple statutes for committing a single offense, a circumstance known as "double description," and cases where a defendant has been convicted of multiple violations of the same statute for the same conduct, called "unit of prosecution" cases. *See id.* Here, we apply a unit of prosecution analysis because Defendant challenges his multiple convictions arising under Section 30-9-13(B)(1).

**{7}** The central task in a unit of prosecution analysis is to determine whether the Legislature intended to allow multiple convictions under the same statute for the defendant's particular conduct in a given case. *See Herron v. State*, 1991-NMSC-012, ¶ 6, 111 N.M. 357, 805 P.2d 624 ("[T]he *only* function the [d]ouble [j]eopardy [c]lause serves in cases challenging multiple punishments is to prevent the prosecutor from bringing more charges, and the sentencing court from imposing greater punishments, than the [l]egislative [b]ranch intended." (internal quotation marks and citation omitted)); *State v. Bernal*, 2006-NMSC-050, ¶ 13, 140 N.M. 644, 146 P.3d 289 ("The inquiry is to determine whether the [L]egislature intended multiple punishments for one continuing act.").

**{8}** This analysis proceeds in two steps. *See Bernal*, 2006-NMSC-050, ¶ 14. First, we analyze the statute of conviction to determine whether the Legislature has identified the relevant unit of prosecution, i.e., the conduct that comprises one violation of the statute. *Id.* If the intended unit of prosecution is not clear from the language of the statute, we move on to the second step, "in which we determine whether a defendant's acts are separated by sufficient 'indicia of distinctness' to justify multiple punishments under the same statute." *Id.* In the second step, because the statute is ambiguous, we apply the rule of lenity and construe the statute in favor of the defendant. *State v.*

*Phillips*, 2024-NMSC-009, ¶ 11, 548 P.3d 51; *State v. Benally*, 2021-NMSC-027, ¶ 14, 493 P.3d 366.

**{9}** Here, Defendant and the State agree that Section 30-9-13 is ambiguous as to the unit of prosecution. *See State v. Haskins*, 2008-NMCA-086, ¶ 17, 144 N.M. 287, 186 P.3d 916 ("Our courts have routinely treated [Section 30-9-13] as ambiguous for purposes of multiple punishment, unit of prosecution analysis."). Although we are not bound by this concession, we agree and do not engage in this step of the analysis. Thus, we apply to rule of lenity to our construction of the statute itself, which, in a unit of prosecution analysis, requires that we assume the Legislature did not intend to permit multiple punishments for the same offense. *See Phillips*, 2024-NMSC-099, ¶ 11 ("The rule of lenity requires us to presume that the Legislature did not intend to separately punish discrete acts in a defendant's course of conduct absent proof that each act was in some sense distinct from the others." (internal quotation marks and citation omitted)). With such a construction in mind, as well as its ensuing presumption, we turn to the second step of our analysis in which we determine if Defendant's conduct during each assault was sufficiently distinct to justify multiple convictions of CSCM.

**{10}** In *Herron*, our Supreme Court identified six factors courts may consider when examining a defendant's conduct for the necessary "indicia of distinctness": (1) temporal proximity of charged conduct, (2) location of the victim or victims during each act, (3) existence of any intervening events, (4) sequencing of criminal conduct, (5) the defendant's intent as evidenced by his conduct and utterances, and (6) the number of victims. 1991-NMSC-012, ¶ 15. We note that particular emphasis has been placed on the timing of the acts at issue and the place in which the conduct occurred. *See, e.g.*, *State v. Begaye*, 2023-NMSC-015, ¶ 14, 533 P.3d 1057 (identifying several cases in which the unitary analysis turns primarily on whether the conduct at issue was "sufficiently distinct as to time, place, or action"). If the acts in question cannot be separated by time and place, "resort must be had to the quality and nature of the acts or to the objects and results involved." *Swafford v. State*, 1991-NMSC-043, ¶ 28, 112 N.M. 3, 810 P.2d 1223.

**{11}** If the above considerations do not resolve our inquiry, we may also look to the "elements of the charged offenses, the facts presented at trial, and the instructions given to the jury." *State v. Sena*, 2020-NMSC-011, ¶ 46, 470 P.3d 227. Another principle established by our case law provides that "[u]nitary conduct is not present when one crime is completed before another is committed, or when the force used to commit a crime is separate from the force used to commit another crime." *Id.* Irrespective of which of the *Herron* factors or other considerations is deemed controlling in a given case, our case law makes clear that "if it reasonably can be said that the conduct is unitary, then we must conclude that the conduct was unitary." *See, e.g.*, *Phillips*, 2024-NMSC-009, ¶ 38 (internal quotation marks and citation omitted).

**{12}** Here, Defendant was convicted, in relevant part, of two counts of CSCM for each assaultive episode at issue. Each time, he entered Victim's room while she was asleep—or pretending to be—and touched her breasts, buttocks, and vulva with his

hand. Turning to the *Herron* factors, we first observe that the record before us lacks sufficient detail for an in-depth, moment-by-moment analysis regarding the distinctness of Defendant's conduct. *See* 1991-NMSC-012, ¶ 15.

**{13}** Regarding the temporal proximity of Defendant's acts during each assault, it appears—despite the lack of clear testimony regarding the duration of the assault—that Defendant's contact with each of Victim's body parts occurred in quick succession and during a relatively short time period. Throughout each assault, Victim remained lying down in her bed, and there were no intervening events separating Defendant's contact with the several parts of her body. It does not appear from the record that Victim moved positions while the assaults occurred, and the entirety of each assault took place in one room while Victim was stationary. We note that there is no evidence in the record regarding the duration of each assault, the manner in which Defendant touched Victim (such as with one hand on one body part, or with two hands at once), nor the sequencing of Defendant's acts. It further seems that Defendant's intent—his own sexual gratification—was consistent throughout his various contacts with Victim's body. Given the evidence that is before us, each of the *Herron* factors suggests that Defendant's various contacts with Victim were insufficiently distinct to justify multiple convictions of CSCM for each assault. *See id.*

**{14}** We acknowledge that our Supreme Court has stated, "Unitary conduct is not present when one crime is completed before another is committed, or when the force used to commit a crime is separate from the force used to commit another crime." *Sena*, 2020-NMSC-011, ¶ 46. Thus, it may be argued that each of Defendant's contacts with Victim was complete—even if momentarily so—before the other began, or that the force he used to accomplish each act was distinct, if nonetheless similar. *See id.* However, we do not perceive the quoted sentence from *Sena* to establish a new rule of jurisprudence, which could be interpreted as a single, dispositive factor and would thereby render any analysis under the *Herron* factors superfluous. *Cf. Phillips*, 2024-NMSC-009, ¶ 12 (stating that "[t]o determine whether a defendant's acts are sufficiently distinct, we consider the *Herron* factors"). Indeed, we note that more recent Supreme Court opinions regarding double jeopardy continue to rely on *Herron* and do not embrace the above-quoted sentence from *Sena* as singularly controlling of such an analysis.[2] *See id.* We, therefore, view *Sena*'s guidance to relate to the assessment of evidence in a given case as applicable to the *Herron* factors themselves and not otherwise dispositive on its own. *Cf. Phillips*, 2024-NMSC-009, ¶ 13 ("None of these factors alone is a panacea, but collectively they will assist in guiding future prosecutions under the relevant charging statute." (text only) (citation omitted)).

---

[2]We note that *Phillips* also quoted the same proposition from *Sena* that we now reference, albeit in a double description analysis. *See Phillips*, 2024-NMSC-009, ¶ 38. *Phillips* also reaffirms our Supreme Court's previous holding that unit of prosecution and double description analyses regarding the "indicia of distinctness" of a defendant's acts are "substantially similar." *Id.* ¶¶ 12, 13 (internal quotation marks and citations omitted). Thus, the portion of *Sena* regarding distinctness, including the cited sentence at issue, is applicable in a unit of prosecution analysis. *Phillips*, 2024-NMSC-009, ¶ 13.

**{15}** The State's principal argument in support of the several CSCM convictions is that "when each count of a criminal sexual act involves a separate body part, the acts are sufficiently distinct" and multiple convictions on such facts do not violate double jeopardy. The State primarily relies on two cases, *Herron* and *Haskins*, as well as various out-of-state precedent, in support of this argument. In *Herron*, the defendant was convicted of, in relevant part, twenty-one counts of criminal sexual penetration for one assaultive period on the victim. *See* 1991-NMSC-012, ¶¶ 1, 3. Here, the State points to a portion of *Herron* in which the court stated, "[S]erial penetrations of different orifices, as opposed to repeated penetrations of the same orifice, tend to establish separate offenses." *See id.* ¶ 15. The State extrapolates that statement to imply that "acts involving separate intimate body parts are also distinct." The State does not mention, however, that the *Herron* court concluded that fourteen of the defendant's convictions must be vacated because there was insufficient evidence to establish distinct conduct underpinning each conviction. *See id.* ¶¶ 21-22 ("[W]e have no evidence to support an inference that the penetrations were distinct."). We note that the convictions affirmed in *Herron* were based on conduct deemed to be distinct due to evidence establishing the "protracted nature" of the defendant's acts and one instance in which the victim was repositioned, as well as conduct declared to be legally distinct, i.e., penetrations of a victim's separate orifices with the same body part. *See id.* ¶¶ 15, 20-21 (declaring that "penetrations of separate orifices with the same object" constitute distinct conduct and applying that principle to the acts at issue).

**{16}** *Haskins*, on the other hand, demonstrates a circumstance in which the court found sufficient evidence *did exist* to support the defendant's multiple convictions. 2008-NMCA-086, ¶¶ 18-19. In *Haskins*, the defendant, who was a masseuse administering massage therapy to the victim, was convicted of eight counts of CSCM for unlawfully touching the victim during the massage. *Id.* ¶¶ 1-2. In considering the defendant's claim that his CSCM convictions violated double jeopardy, this Court placed particular emphasis on the victim's testimony related to the different positions she was in when the defendant touched her breasts and her vulva and the fact that the victim was in a different room entirely when the defendant touched her buttocks. *See id.* ¶ 18 ("We hold that [the victim's] position was sufficiently distinct each time she was touched to support a finding of separate offenses.").

**{17}** We view the differing outcomes for otherwise similar fact patterns in the above two cases to be distinctly evidence-based. In that regard, we note that in *Haskins*, we placed particular emphasis on the fourth factor, the sequencing of the acts in question, because it "specifically contemplates sex crimes[ and] contributes heavily to a finding of separate offenses." *Id.* ¶ 19. We stated that the victim "was touched in three separate locations on her body, a fact which weighs in favor of separate offenses." *Id.* Here, the State argues that this factor must control our analysis and urges us to adopt a rule recognizing that a defendant's contact with separate body parts alone supports multiple convictions for CSCM. We view our precedent, however, to constrain our adoption of such a rule and reiterate that such a consideration is merely one factor among many others that "*weighs in favor* of separate offenses." *Id.* (emphasis added). And it is

evidence, reviewed on a case-by-case basis, that tilts a given instance of sexual assault one way or another.[3]

**{18}** Here, Defendant touched Victim on several, distinct locations of her body. However, Defendant did so in a relatively short period of time, without any established intervening events, and Victim remained in the same position throughout the assault, which evidence failed to establish was lengthy or protracted. While we do not conclude that separate contacts with a victim are never distinct enough to support multiple convictions, the record before us is absent any additional evidence that could support such a conclusion. Another case, *State v. Ervin*, 2008-NMCA-016, 143 N.M. 493, 177 P.3d 1067, further illustrates this conclusion. In *Ervin*, the defendant, who was also administering a massage to the victim at the time of his assault, was convicted of five counts of CSCM. *See id.* ¶¶ 1, 3, 46. On appeal, this Court concluded that the defendant's separate contacts with the victim's breasts, buttocks, and vulva were "one continuous course of conduct, not capable of being split into three charges merely because [the d]efendant touched three different body parts." *Id.* ¶ 46. We reasoned that there was only one victim, there was no lapse in time between the contacts, and there were no intervening events. *Id.*

**{19}** The facts of both the instant case and *Ervin* place those of *Haskins* in stark contrast and demonstrate that, absent sufficient evidence establishing distinct conduct—primarily through showing sufficient temporal gaps, positional changes, or other intervening events—touching different parts of a victim's body is alone insufficient to support multiple convictions of CSCM. Here, we are without any evidence, apart from the fact that Defendant touched different parts of Victim's body, to conclude that Defendant's conduct was distinct. *See Phillips*, 2024-NMSC-009, ¶ 38 ("[I]f it reasonably can be said that the conduct is unitary, then we must conclude that the conduct was unitary." (internal quotation marks and citation omitted)); *State v. Degraff*, 2006-NMSC-011, ¶ 32, 139 N.M. 211, 131 P.3d 61 (stating that under the rule of lenity, there is a "presumption against imposing multiple punishments for acts that are not sufficiently distinct"). We, therefore, reject the State's argument and conclude that one of Defendant's convictions of CSCM for each assault must be vacated.

**CONCLUSION**

**{20}** For the reasons stated above, we hold that Defendant's conduct during each assault on Victim was insufficiently distinct to support multiple convictions of CSCM.

---

3We observe that the technical application of law to facts in a stale record may at times fail to address the separateness of violative contacts from the perspective of the victim who suffers multiple touches, each presenting a distinct harm, in a given sexual assault. Considering such distinct harms from the perspective of the victim, our Supreme Court may well wish to revisit the interaction of the verbiage in *Sena* and the factors in *Herron*, should the State seek certiorari and clarity that is more concrete in this unfortunately prevalent arena of law. Absent concrete guidance from our Supreme Court that cases involving sexual assault are to be treated differently than other, more general cases when reviewed for alleged double jeopardy violations, and in applying the rule of lenity, we cannot now conclude that the victim's perception of distinct harms is alone sufficient to maintain multiple convictions for otherwise indistinct conduct.

We, therefore, affirm Defendant's convictions of one count of CSPM and one count of CSCM from each assaultive period described above but remand to the district court with directions to vacate one count of CSCM from each period. *See State v. Porter*, 2020-NMSC-020, ¶ 42, 476 P.3d 1201 ("Where, as here, both offenses result in the same degree of felony, the choice of which conviction to vacate lies in the sound discretion of the district court.").

**{21}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**JANE B. YOHALEM, Judge**