The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: <u>December 11, 2024</u>

**No. A-1-CA-41049**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**MARIO URQUIDI-MARTINEZ,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Mary Marlowe Sommer, District Court Judge**

Raúl Torrez, Attorney General
Teresa Ryan, Assistant Solicitor General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Joelle N. Gonzales, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**DUFFY, Judge.**

{1}     A jury convicted Defendant Mario Urquidi-Martinez of five sexual offenses for performing a variety of sexual acts on Victim while she was intoxicated and unconscious in Defendant's car, after she had expressly and repeatedly told him she did not want to have sex with him. On appeal, Defendant raises three issues, arguing (1) his three convictions for criminal sexual penetration violate double jeopardy; (2) his convictions for criminal sexual penetration and criminal sexual contact violate double jeopardy; and (3) he received ineffective assistance of counsel. We are compelled by constitutional double jeopardy principles to reverse two of Defendant's convictions for criminal sexual penetration. We otherwise affirm.

**BACKGROUND**

{2}     Victim worked as a server at the Eldorado Hotel in Santa Fe, New Mexico. In March 2020, Victim planned to go out for drinks with three of her coworkers, including Defendant, when she got off work around 3:30 p.m. Two of her coworkers never showed up and Victim ended up at the Blue Corn Café with Defendant alone. Victim had two or three drinks while there. Eventually, she and Defendant left and went to the Coyote Café, where they sat down at the bar. Victim did not order a drink but the bartender made one for her. When Victim and Defendant left the Coyote

Café, they walked to Defendant's car because he was going to give Victim a ride to her car.

{3} Victim got into the passenger seat. Defendant, in the driver's seat, began to kiss Victim and touched her breasts and legs. Victim told him they were not going to have sex. Defendant kept trying. Victim told him she was on her period and she was not going to have sex. According to Victim, Defendant said he was a man and he could handle it, and tried again. Victim said, "No." At that point, Defendant turned on loud music and started to drive off. Victim blacked out.

{4} Victim testified that the next thing she remembered was being in the back seat of Defendant's car with him on top of her. She stated that her pants were off and Defendant's face was in her genital area. Victim believed they were parked near her car because she could see her car in the rearview mirror. It was still light outside. She saw people walking by Defendant's car and remembered thinking about whether they could see her in there being raped, and then she blacked out again.

{5} When Victim woke up, she was still in the back seat of Defendant's car, now completely naked, in a different location. She saw they were in a parking lot and eventually realized they were at the Whole Foods on Cerrillos Road. Defendant was in the front seat talking on his phone. Victim did not know where her phone was. Victim felt like she needed to throw up and tried to get out of the car but ended up vomiting in the back seat on the door. Defendant got off the phone and asked Victim

if she had cash. Victim had cash in her pants but did not know where they were. After she found them, Defendant told her to get dressed.

{6} Victim's sister, Z.M., called Victim and Defendant several times between 5:30 and 6:00 p.m. with no response. Z.M. was trying to reach Victim because their mother had called and said Victim had not made it home and was not answering her phone. At around 7:00 p.m. Defendant called Z.M. and said he had Victim in his car and that she was very drunk. Defendant asked if Z.M. could come pick Victim up. Z.M. agreed and Defendant sent Z.M. a location, but when Z.M. arrived, Defendant was not there and was not answering his phone. Eventually, Defendant called Z.M. back and told her that he was just going to get a hotel room and take Victim home later on. Z.M. told him no and pressed Defendant for his location, saying she would be right there. He told her that he was at the Sage Inn.

{7} When Z.M. arrived at the Sage Inn, she saw Victim laying in the back seat of Defendant's car. As Z.M. helped Victim out, she noticed that Victim was pulling her shirt together in front as if it did not have any buttons or any other way to close it. She saw that Victim's hair was full of vomit and she was crying. Defendant told Z.M. to get Victim's belongings because he did not want his girlfriend to find out that another woman had been in his car. Z.M. found Victim's bra in the back seat; it was torn and missing a strap. Victim's apron was in the front seat and her shoes were

3

on the floor. Z.M. asked Defendant for Victim's phone and he grabbed it from the center console area.

{8} After Z.M. got Victim safely away from Defendant, she was worried about what their mother would think if she saw Victim in this condition. Z.M. took Victim to a hotel to get cleaned up. Victim showered and afterward, asked Z.M. to check between her legs to see if Z.M. could see the strings from the tampon Victim had been wearing. Z.M. did not see a string. At that point, Z.M. called the police.

{9} A police officer interviewed Victim and then took her to the hospital for a sexual assault nurse examiner (SANE) examination, which was performed by SANE Kalan. During her examination of Victim, SANE Kalan found bruising and scrape marks on Victim's right breast, cuts and abrasions on one of Victim's thighs, and a one centimeter laceration on Victim's vagina, which she described as acute and severe. SANE Kalan also used a speculum to look inside Victim's vagina and discovered a tampon pushed up against Victim's cervix in a horizontal position. The tampon had to be removed using long forceps. DNA evidence contained on a vaginal swab collected during the SANE exam showed a match with Defendant's DNA profile.

{10} The State charged Defendant with three counts of criminal sexual penetration (CSP), for causing Victim to engage in sexual intercourse (Count 1), for causing "the penetration, to any extent of his fingers into the genital opening of [Victim]" (Count

4

2), and for causing Victim to engage in cunnilingus (Count 3). *See* NMSA 1978, § 30-9-11(E)(3) (2009). The State also charged Defendant with two counts of criminal sexual contact (CSC) for touching Victim's breasts (Counts 4 and 5). *See* NMSA 1978, § 30-9-12 (1993). Trial took place over two days. The jury found Defendant guilty of all counts. The district court granted Defendant's motion to vacate one of his convictions for CSC, Count 5, on double jeopardy grounds. For his remaining convictions, the district court imposed a total sentence of sixteen-and-one-half years, with six years suspended. Defendant appeals.

**DISCUSSION**

**I.     Double Jeopardy**

{11}     Defendant raises two double jeopardy arguments on appeal. First, he argues that his three convictions for CSP are based on unitary conduct and can therefore be punished only as a single offense. Second, Defendant contends that his convictions for CSP and CSC also violate double jeopardy because the conduct underlying the charges was not separated by sufficient indicia of distinctness. We review double jeopardy challenges de novo. *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747.

**A.     Defendant's Convictions for CSP Violate Double Jeopardy**

{12}     Defendant first raises a unit of prosecution challenge to his three convictions for CSP. For unit of prosecutions cases, we engage in a two-step analysis. *State v. Gallegos*, 2011-NMSC-027, ¶ 31, 149 N.M. 704, 254 P.3d 655. Under the first step,

"courts must analyze the statute at issue to determine whether the Legislature has defined the unit of prosecution." *Swick*, 2012-NMSC-018, ¶ 33. "If the language is not clear, then we move to the second step, in which we determine whether a defendant's acts are separated by sufficient 'indicia of distinctness' to justify multiple punishments under the same statute." *Gallegos*, 2011-NMSC-027, ¶ 31 (citation omitted). "If the acts are not sufficiently distinct, then the rule of lenity mandates an interpretation that the [L]egislature did not intend multiple punishments, and a defendant cannot be punished for multiple crimes." *State v. Bernal*, 2006-NMSC-050, ¶ 14, 140 N.M. 644, 146 P.3d 289.

{13}     At the first step of our analysis, our Supreme Court has already determined that Section 30-9-11 is ambiguous as to the unit of prosecution. *See Herron v. State*, 1991-NMSC-012, ¶ 8, 111 N.M. 357, 805 P.2d 624 (stating that the language of Section 30-9-11 "does not indicate unambiguously whether the [L]egislature intended . . . to create a separate offense for each penetration occurring during a continuous sexual assault"). Consequently, like the parties, we focus our analysis on the second step—whether Defendant's acts were separated by sufficient indicia of distinctness to justify multiple punishments under the same statute.

{14}     We evaluate distinctness by looking at the six factors originally set forth in *Herron*: "(1) time between criminal acts, (2) location of the victim during each act, (3) existence of any intervening events, (4) sequence in commission of the acts, (5)

6

the defendant's intent, and (6) the number of victims." *State v. Benally*, 2021-NMSC-027, ¶ 19, 493 P.3d 366 (citing *Herron*, 1991-NMSC-012, ¶ 15). No single factor is dispositive, and "all factors should be considered together in light of the facts and circumstances of each case." *State v. Phillips*, 2024-NMSC-009, ¶ 13, 548 P.3d 51; *see Herron*, 1991-NMSC-012, ¶ 15. The overarching goal in this analysis is "to determine, based upon the specific facts of each case, whether a defendant's activity is better characterized as one unitary act, or multiple, distinct acts, consistent with legislative intent." *Phillips*, 2024-NMSC-009, ¶ 13 (internal quotation marks and citation omitted).

{15} Defendant's three CSP convictions were based on evidence that Defendant penetrated Victim's vagina with his penis, fingers, and mouth (Counts 1-3, respectively). Turning to the *Herron* factors, we face a record that lacks detail about the temporal proximity of the acts, the location of the Victim during each act, the existence of an intervening event, or the sequencing of the acts. Victim's testimony provided specificity as to the time and location only of the cunnilingus, indicating that it occurred in the back seat of Defendant's car while parked near Victim's car when it was still light outside. Victim testified that Defendant also digitally penetrated her while in the back seat of his car, but the State did not ask for, and Victim did not volunteer, any information regarding the time of day or timing in relation to Defendant's other assaultive conduct, whether Defendant had driven to

another location (an intervening event), or the sequence of the acts. Finally, although there was clear evidence that penile penetration had occurred, Victim testified that she did not remember it.

{16} Beyond Victim's trial testimony, the State admitted a partially redacted SANE patient narrative as an exhibit at trial. The unredacted portions of the narrative state that Defendant had penetrated, stuck his fingers inside of, and performed cunnilingus on Victim, but did not provide any information on the timing, location, or sequence of these events. We acknowledge that the lack of detail is directly a product of Defendant's decision to sexually assault an intoxicated, unconscious victim. Nevertheless, we face a record that lacks detail establishing whether the assault proceeded as a continuous course of conduct or as a series of distinct acts. As a result, even though there may in fact have been multiple CSPs in this case, we must conclude the evidence presented does not permit an inference that the offensive contacts were separate and distinct. *See Benally*, 2021-NMSC-027, ¶ 23 (stating that "if we can reasonably infer that a defendant's acts were distinct under the applicable indicia of distinctness, then we will presume that the defendant has not received more punishments than were statutorily authorized[, but i]f a defendant's acts are not sufficiently distinct, then we will return to our lenient construction of the statute and presume that the defendant has received more punishments than were statutorily authorized" (citation omitted)); *Herron*, 1991-NMSC-012, ¶ 15 ("Section 30-9-11

8

cannot be said as a matter of law to evince a legislative intent to punish separately each penetration . . . *absent proof that each act of penetration is in some sense distinct from the others.*" (emphasis added)); *State v. Mares*, 1991-NMCA-052, ¶¶ 26-27, 112 N.M. 193, 812 P.2d 1341 (noting the lack of detail in the record and stating that mere speculation was not sufficient to support a verdict of multiple batteries in a double jeopardy case).

{17}     The State's principle argument in support of multiple punishments is that the evidence at trial clearly demonstrated temporal and physical separation of the events.[1] The State's account, however, is unsupported by the record. For example, with respect to Counts 2 and 3, the State asserts that Defendant performed cunnilingus on Victim in the back seat of his vehicle and then drove Victim to a different parking lot before returning to the back seat and digitally penetrating her. Victim's testimony does not support this version of the events. Victim did not testify that any sexual assault occurred in the Whole Foods parking lot, and there is

---

[1] The State does not argue that the force used to commit the crimes was separate, or that Defendant repositioned Victim during the assault. *See State v. Valverde*, ___-NMCA-___, ¶ 14 ___ P.3d ___ (A-1-CA-40146, November 18, 2024) (stating that these types of arguments "relate to the assessment of the evidence in a given case as applicable to the *Herron* factors"). To the extent the State contends we can infer from the Victim's testimony that Defendant performed cunnilingus prior to driving to a different parking lot, we find no support in the transcript for this inference. *See Bowman v. Inc. Cnty. of Los Alamos*, 1985-NMCA-040, ¶ 9, 102 N.M. 660, 699 P.2d 133 ("An inference is more than a supposition or conjecture. It is a logical deduction from facts which are proven, and guess work is not a substitute therefor." (internal quotation marks and citation omitted)).

9

otherwise nothing in the record to indicate that Defendant drove Victim to another location before digitally penetrating her. Similarly, the State speculates that the sexual intercourse must have occurred at a separate point in time because "[p]resumably, if the sexual intercourse had occurred around the time of the digital penetration, . . . [V]ictim would have been aware it was happening—again, particularly given the force that must have been used to push the tampon up so high." We reject the State's proposed inference as unreasonable given that Victim testified she did not remember the intercourse, notwithstanding the violence of the act, and we simply have no evidence in the record as to when or where it occurred in relation to the other acts.

{18}   The State, citing *Herron*, 1991-NMSC-012, ¶¶ 20-21, also asserts that "[i]n the face of this gap in record detail, the presumption is that the [penile penetration] was distinct from the other two [acts]." The State then concludes that "[n]o evidence can be pointed to [in order] to rebut this presumption." We understand the State's argument to be that penetrations of Victim's same body part with different objects are presumptively separate offenses. *Herron*, however, does not stand for such a proposition.

{19}   In *Herron*, the defendant was convicted of twenty-one counts of CSP for conduct occurring during a protracted sexual assault. 1991-NMSC-012, ¶¶ 1, 3. Our Supreme Court, applying the rule of lenity, held that "Section 30-9-11 cannot be said

as a matter of law to evince a legislative intent to punish separately each penetration occurring during a continuous attack absent proof that each act of penetration is in some sense distinct from the others." *Herron*, 1991-NMSC-012, ¶ 15. After setting out the six factors discussed above that inform an evaluation of distinctness, the Court concluded by saying that "[e]*xcept for penetrations of separate orifices with the same object*, none of these factors alone is a panacea, but collectively they will assist in guiding future prosecutions under Section 30-9-11." *Herron*, 1991-NMSC-012, ¶ 15 (emphasis added).

{20} To the extent our Supreme Court in *Herron* indicated that "penetrations of separate orifices with the same object" tend to establish separate offenses, those facts are not present here. *Id.* And in the more than three decades since *Herron* was decided, our courts have declined to expand the "separate-orifice-same-object" rationale to include all acts involving separate intimate body parts. *See State v. Valverde*, ___-NMCA-___, ¶¶ 15-19, ___ P.3d ___ (A-1-CA-40146, November 18, 2024). Further, the Court in *Herron* appears to have considered and rejected the idea that a defendant's act of touching a single part of victim's body with different objects constitutes separate conduct as a matter of law:

> It could be said [Section 30-9-11], by its terms, evinces a legislative intent to punish separately each penetration of a single orifice with different objects or of different orifices with the same or different objects. Nevertheless, as the instant case suggests, separate penetrations can occur within sufficient temporal proximity to raise doubt whether the [L]egislature intended separate punishments for those acts which

11

> could equally be inspired by a single criminal intent bent on a single assaultive episode. Thus, for example, we cannot say as a matter of law that digital penetration of the vagina followed immediately by penile penetration of the same orifice constitutes two punishable acts under Section 30-9-11.

*Herron*, 1991-NMSC-012, ¶ 13. In sum, we find nothing in *Herron* or its progeny to support the State's theory that Defendant's conduct is either presumptively separate or separate as a matter of law under the facts here.

{21}   Contrary to the State's assertion, our Supreme Court has not adopted any rule that "could be interpreted as a single, dispositive factor [that] would thereby render any analysis under the *Herron* factors superfluous." *Valverde*, ___-NMCA-___, ¶ 14 (reiterating that New Mexico courts continue to rely on and apply the *Herron* factors for evaluating the distinctness of a defendant's conduct in CSP cases); *see also id.* ¶ 17 (reaffirming that the fact that the defendant touched separate locations on the victim's body remains "one factor among many that weighs in favor of separate offenses" (alteration, internal quotation marks, and citation omitted)); *State v. Mares*, 2024-NMSC-002, ¶ 34, 543 P.3d 1198 (stating that "vertical stare decisis, as recognized in the *Alexander* doctrine, requires absolute fealty to this Court's precedents by the Court of Appeals"). Under longstanding double jeopardy jurisprudence, there is a "presumption against imposing multiple punishments for acts that are not sufficiently distinct." *State v. DeGraff*, 2006-NMSC-011, ¶ 32, 139

N.M. 211, 131 P.3d 61. It is the State's burden to establish that each of the charged acts was distinct. *See Herron*, 1991-NMSC-012, ¶ 16.

{22} After careful review, we must conclude that apart from evidence that Defendant penetrated Victim's vagina with three different objects, the record before us lacks additional evidence of distinctness that would support separate convictions.[2] We, therefore, reject the State's arguments and conclude that two of Defendant's convictions for CSP must be vacated on double jeopardy grounds. Because the jury convicted Defendant of CSP in the second degree on Count 1 and CSP in the third degree on Counts 2 and 3, we vacate Defendant's convictions on Counts 2 and 3. *See Swick*, 2012-NMSC-018, ¶ 31 (holding that the general rule requires the lesser offenses be vacated to cure the double jeopardy violation).

**B.    Defendant's Convictions for CSP and CSC Do Not Violate Double Jeopardy**

{23} Defendant also argues that his remaining conviction for second degree CSP (Count 1) and his conviction for CSC (Count 4) pose a double description double jeopardy problem, where "a single act results in multiple charges under different criminal statutes." *State v. Begaye*, 2023-NMSC-015, ¶ 12, 533 P.3d 1057 (internal quotation marks and citation omitted). To evaluate a double description claim, we

---

[2]As we did in *Valverde*, we "observe that the technical application of law to facts in a [deficient] record may at times fail to address the separateness of violative contacts from the perspective of the victim who suffers multiple touches, each presenting a distinct harm, in a given sexual assault." \_\_\_-NMCA-\_\_\_, ¶ 17 n.3.

apply the two-part test described in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. "First, we examine whether the conduct was unitary, meaning whether the same criminal conduct is the basis for both charges." *Bernal*, 2006-NMSC-050, ¶ 9. "Second, we examine the statutes at issue to determine whether the [L]egislature intended to create separately punishable offenses." *Begaye*, 2023-NMSC-015, ¶ 13 (internal quotation marks and citation omitted). "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment[s] in the same trial." *Swafford*, 1991-NMSC-043, ¶ 25.

{24}    At the first step, we must determine whether the conduct underlying Defendant's convictions for CSP and CSC was unitary. "A defendant's conduct is unitary if the acts are not separated by sufficient indicia of distinctness." *Begaye*, 2023-NMSC-015, ¶ 20 (internal quotation marks and citation omitted); *see also State v. Sena*, 2020-NMSC-011, ¶ 46, 470 P.3d 227 ("When sufficient indicia of distinctness separate the illegal acts, the conduct is not unitary, and a defendant does not face conviction and punishment for the same factual event." (internal quotation marks and citation omitted)). "'Sufficient indicia of distinctness' are present when the illegal acts are sufficiently separated by either time or space (in the sense of physical distance between the places where the acts occurred)." *Sena*, 2020-NMSC-011, ¶ 46 (alteration, internal quotation marks, and citation omitted). "If these

14

considerations do not suffice to make the determination, resort must be had to the quality and nature of the acts or to the objects and results involved." *Id.* (internal quotation marks and citation omitted); *see also Phillips*, 2024-NMSC-009, ¶ 38 (stating that New Mexico courts "apply the six *Herron* factors in the double description analysis to determine whether a defendant's acts are unitary or distinct"). As well, "[t]he conduct question depends to a large degree on the elements of the charged offenses and the facts presented at trial." *Swafford*, 1991-NMSC-043, ¶ 27. "Unitary conduct is not present when one crime is completed before another is committed, or when the force used to commit a crime is separate from the force used to commit another crime." *Sena*, 2020-NMSC-011, ¶ 46.

{25} With these standards in mind, we turn to the two convictions at issue. As noted above, Defendant was convicted of CSP in Count 1 for "caus[ing Victim] to engage in sexual intercourse." Defendant was convicted of CSC in Count 4 for touching or applying force to Victim's breast. Defendant notes that Victim testified that Defendant touched her breasts when they first got into Defendant's car. Defendant argues that because Victim did *not* testify that her breast was injured during this encounter, there must have been another, later instance where Defendant touched Victim's breast. Defendant then speculates that "[t]he breast injury could have occurred during the sexual penetration."

**{26}** On the facts presented at trial, however, Victim testified to only one instance where Defendant touched her breast, when she first got into Defendant's vehicle. In the SANE patient narrative Victim stated that Defendant "started kissing me and feeling me up, all over my breasts and kissing me." Even though Victim was not asked about whether her breast was injured during this initial encounter, the State introduced photographs showing scratches and bruising on her breast. The State directed the jury to this evidence during closing, stating, "So, on Count 4, really, the question is was there criminal sexual contact with [Victim's] breasts and personal injury? You heard testimony from Victim that [Defendant] touched her breast. You saw the photographs; you saw two different injuries in those photographs." Based on the evidence presented, the jury could have concluded that the bruising or scrapes shown in the photograph exhibits occurred during the initial encounter.

**{27}** Based on the evidence presented, the conduct forming the basis of Defendant's convictions was nonunitary. Victim testified that after repeatedly telling Defendant no, he stopped touching her and drove off. At that point, the CSC was complete and the CSP had not yet occurred. Because the two acts were separated by both time and space, each act was sufficiently distinct. Accordingly, there is no double jeopardy violation in Defendant's convictions for Counts 1 and 4.

16

## II.    Ineffective Assistance of Counsel

**{28}**    Finally, Defendant contends he received ineffective assistance of counsel at trial because his attorney (1) failed to object to SANE Kalan's testimony, (2) failed to object to the admission of the patient narrative from the SANE examination report, (3) entered the rest of the SANE examination report unredacted as the only defense exhibit, and (4) failed to allow Victim to be recalled.

**{29}**    "We review claims of ineffective assistance of counsel de novo." *State v. Cordova*, 2014-NMCA-081, ¶ 6, 331 P.3d 980. "To state a claim for ineffective assistance of counsel, a defendant must establish that (1) counsel's performance was deficient, and (2) such deficiency resulted in prejudice against the defendant." *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057. "[T]here is a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (internal quotation marks and citation omitted). "With regard to the prejudice prong, . . . a defendant must demonstrate that counsel's errors were so serious, such a failure of the adversarial process, that such errors undermine judicial confidence in the accuracy and reliability of the outcome." *Bernal*, 2006-NMSC-050, ¶ 32 (alteration, internal quotation marks, and citations omitted). "A defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (internal quotation marks and citation omitted).

**{30}** In this case, we resolve Defendant's claim based on the lack of a showing of sufficient prejudice. *See State v. Hernandez*, 1993-NMSC-007, ¶ 27, 115 N.M. 6, 846 P.2d 312 ("A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." (omission, alteration, internal quotation marks, and citation omitted)). Defendant argues that had counsel objected appropriately, evidence would have been excluded, and the strength of the State's remaining evidence was only "minimal." We understand Defendant to argue that the evidence in support of his convictions would have been insufficient without the evidence Defendant contends should have been excluded. We are not persuaded that this is the case. Even if we declined to consider the evidence Defendant highlights as objectionable and inadmissible, the State presented ample evidence to support Defendant's convictions for CSP based on Victim's testimony, forensic DNA evidence, and SANE Kalan's testimony. As for the strength of that evidence, we are not presented with any basis to conclude the jury would have decided differently had defense counsel taken the measures Defendant identifies in his briefing. *See State v. Torres*, 2005-NMCA-070, ¶ 18, 137 N.M. 607, 113 P.3d 877 ("[A]n assertion of prejudice is not a showing of prejudice." (internal quotation marks and citation omitted)).

18

**{31}** Defendant also contends that defense counsel's refusal to allow the State to recall Victim to testify about SANE Kalan's testimony and the SANE examination report "denied [Defendant] the right of effective cross-examination, which is per se prejudicial." *See State v. Grogan*, 2007-NMSC-039, ¶ 12, 142 N.M. 107, 163 P.3d 494 (stating that a defendant is relieved of the burden of establishing prejudice in three circumstances, including "when the accused is denied the right of effective cross-examination"). Defendant has not, however, explained how the circumstances here amount to a denial of the right to cross-examination, particularly given that Defendant had an opportunity to cross-examine both Victim and SANE Kalan during trial.

**{32}** We conclude that Defendant has not established a prima facie case of ineffective assistance of counsel to warrant remand for an evidentiary hearing. *See Bernal*, 2006-NMSC-050, ¶ 33. Nevertheless, Defendant "is free to pursue habeas corpus proceedings where he may actually develop the record with respect to these issues." *State v. Arrendondo*, 2012-NMSC-013, ¶ 44, 278 P.3d 517; *see also Bernal*, 2006-NMSC-050, ¶ 33 (stating that our Supreme Court has expressed a preference that ineffective assistance of counsel claims be adjudicated through habeas corpus proceedings, rather than on direct appeal).

**CONCLUSION**

**{33}** For the foregoing reasons, we vacate Defendant's convictions for third degree CSP in Counts 2 and 3 on double jeopardy grounds and remand to the district court for resentencing. We otherwise affirm.

**{34}** **IT IS SO ORDERED.**

_____
**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

_____
**JACQUELINE R. MEDINA, Judge**

_____
**GERALD E. BACA, Judge**

20