The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: April 6, 2026

**NO. S-1-SC-40407**

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner,

v.

**SAMUEL NEAL,**

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Melissa A. Kennelly, District Judge**

Raúl Torrez, Attorney General
Van Snow, Deputy Solicitor General
Santa Fe, NM

for Petitioner

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Joelle N. Gonzales, Assistant Appellate Defender
Santa Fe, NM

for Respondent

**OPINION**

**VARGAS, Justice.**

{1}     Prosecutors are called upon to make myriad strategic decisions when planning the prosecution of a criminal defendant. Among these decisions are determinations of the charges to bring and the legal theories on which those charges are based. This case demonstrates the tension felt by prosecutors between the desire to ensure a conviction on the most serious charge and the objective of securing convictions on multiple lesser charges without violating double jeopardy. Here, the State chose to present the jury with multiple factual and legal alternatives to support a general verdict of guilt on the most serious charge, apparently prioritizing that conviction over multiple valid convictions using discreet theories for each offense. While the State is entitled to elect such a trial strategy, that choice may, as in this case, implicate double jeopardy. At trial, the State obtained convictions in Defendant Samuel Neal's case on first-degree kidnapping, second-degree criminal sexual penetration (CSP II), and aggravated battery.

{2}     The State asserts that the Court of Appeals erred in vacating two of Defendant's three convictions on double jeopardy grounds. We affirm the Court of Appeals' conclusion that double jeopardy bars Defendant's conviction for CSP II because the State effectively presented CSP II as the base sexual offense to elevate

kidnapping from second- to first-degree kidnapping. The State did not present the jury with any other sexual offenses that would support more than one conviction, and thus the conviction for the base offense must be vacated. As for aggravated battery, the Court of Appeals erred in vacating Defendant's conviction without analyzing whether it conflicted with kidnapping—the lone remaining conviction after CSP II was vacated. Conducting that analysis here, we conclude that Defendant's convictions for kidnapping and aggravated battery do not violate double jeopardy because the jury could have reasonably inferred independent factual bases for each offense. Finally, the State invites this Court to abandon its double jeopardy approach, asserting that it is so unworkable that it has become intolerable. We disagree and decline to take the drastic step of overruling decades of our own precedent when—as illustrated below—the State might have obtained multiple convictions under our current approach without violating double jeopardy had it pled and tried the case differently.

## I.  BACKGROUND

### A.  Facts

{3}    On June 30, 2019, Michelle Anderson (Victim) arrived in Raton, New Mexico. Victim was traveling home to Colorado from Texas where she recently finished her college field studies. Victim and a college classmate stopped at a hotel

for the night. After checking in to the hotel, Victim spoke on the phone with her mother outside the hotel, walking back and forth along the street and sidewalk.

{4} During the phone call, Defendant approached Victim and asked her to "hang out." She declined multiple times. To get Defendant to leave her alone, she told Defendant she would come find him after her phone call. Sometime later, Defendant again approached Victim and she agreed to follow him. Defendant led her to an abandoned motel, climbed through a window, and eventually convinced her to follow. After Victim placed one foot on the windowsill, Defendant grabbed Victim "in a bear hug" and pulled her through the window. Defendant assaulted and strangled Victim. Eventually, unable to breathe, Victim stopped struggling out of fear she was going to die. Defendant moved Victim to a mattress and sexually assaulted her, resulting in injuries to her vaginal area. These facts are largely undisputed. Additional facts are included as necessary to examine whether Defendant's double jeopardy rights were violated at his subsequent trial and sentencing.

**B.    Procedural History**

{5} Defendant was charged and ultimately convicted, in relevant part, of first-degree kidnapping, contrary to NMSA 1978, § 30-4-1 (2003); CSP II, contrary to NMSA 1978, § 30-9-11(E)(3) (2009); and aggravated battery, contrary to NMSA

1978, § 30-3-5(A), (C) (1969). He received a sentence of approximately thirty years—eighteen years for kidnapping, nine years for CSP II, and three years for aggravated battery. Of particular relevance here, Defendant was convicted of first-degree kidnapping under a general verdict, based on a jury instruction that allowed a conviction under multiple legal alternatives. Defendant appealed, and the Court of Appeals, relying on a novel analytical approach that we address in detail below, vacated his CSP II and aggravated battery convictions on double jeopardy grounds in a memorandum opinion. *See State v. Neal*, A-1-CA-40205, mem. op. ¶¶ 8, 26 (N.M. Ct. App. Apr. 24, 2024) (nonprecedential).

{6}     We granted the State's cross-petition for certiorari,[1] which raised two questions: (1) "Whether the Court of Appeals violated precedent by vacating a conviction without a double jeopardy violation and applying the wrong standard for judging unitary conduct," and (2) "Whether this Court should reconsider its approach to examining double description claims."

**II.     DISCUSSION**

{7}     As a threshold matter, we agree with the State that the Court of Appeals erred by vacating both of Defendant's lesser convictions due to its novel and ultimately

---

[1]Defendant petitioned for certiorari, which this Court denied. Order, *State v. Neal*, S-1-SC-40205 (N.M. May 22, 2024).

flawed analysis. We next consider whether our current approach to double jeopardy is unworkable under the facts of this case and conclude by examining whether this Court should abandon or modify its approach to double jeopardy.

**A.     Double Jeopardy**

**1.     Court of Appeals' flawed analysis**

{8}     Before the Court of Appeals, Defendant argued that his kidnapping conviction subsumed his convictions of CSP II and aggravated battery under double jeopardy principles. *Neal*, A-1-CA-40205, mem. op. ¶ 8. The Court of Appeals ultimately vacated Defendant's CSP II and aggravated battery convictions. *Id.* ¶ 26. It did so, however, via a novel analytical approach that neither party argued. Rather than examining whether kidnapping—as the conviction with the longest sentence—resulted in a double jeopardy violation as to either or both of the crimes with shorter sentences, the Court of Appeals instead concluded first that the CSP II conviction subsumed the *aggravated battery* conviction. *Id.* ¶ 12. It then separately concluded that the kidnapping conviction subsumed the CSP II conviction. *Id.* ¶ 15. The State rightly asserts that the Court of Appeals ultimately vacated Defendant's aggravated battery conviction without ever analyzing or considering whether it violated double jeopardy as compared with kidnapping, the only charge that was not vacated.

{9} The State's assertion of error on this point is primarily structural rather than focused on the factual analysis contained within the Court of Appeals' memorandum opinion. The State contends that, when the Court of Appeals vacated the CSP II conviction, it should have "reinstated the aggravated battery conviction, because there would no longer be a conflicting CSP [II] conviction." This argument is overly simplistic. However, we agree that the Court of Appeals vacated Defendant's aggravated battery conviction "without analyzing whether the battery was the same as the kidnapping," the only charge that was not vacated. And, as the State recognizes, it had no opportunity to argue under, or respond to, the approach employed by the Court of Appeals as it was not argued by either party. Defendant does little to defend the structure of the Court of Appeals' analysis, instead primarily asserting that the result would be the same if the Court of Appeals *had* analyzed whether kidnapping subsumed aggravated battery. In support of this argument, Defendant refers this Court to his papers filed before the Court of Appeals, where he argued that kidnapping subsumed aggravated battery. In effect, Defendant suggests that the Court of Appeals would have vacated his aggravated battery conviction *if it had* analyzed whether kidnapping subsumed aggravated battery.

{10} On this structural point, we agree with the State. Where an appellate court is confronted with the argument that a greater crime requires the vacatur of more than

one lesser conviction, it must compare each lesser crime against the most severe conviction, as that is the offense that will not be vacated on double jeopardy grounds. *See State v. Montoya*, 2013-NMSC-020, ¶ 55, 306 P.3d 426 (explaining that the conviction with the longest sentence stands when there is a double jeopardy violation). Because the offense with the longest sentence will always remain, appellate courts compare it with each lesser crime that might be subsumed by the conviction with the longest sentence, rather than comparing the lesser crimes against each other, as the Court of Appeals did here. *See, e.g.*, *State v. Sena*, 2020-NMSC-011, ¶ 56, 470 P.3d 227 (comparing the most severe conviction (criminal sexual penetration) with aggravated burglary and then with criminal sexual contact); *State v. Foster*, 1999-NMSC-007, ¶¶ 30, 37, 126 N.M. 646, 974 P.2d 140 (comparing felony murder first with the lesser conviction of aggravated kidnapping before proceeding to consider felony murder and armed robbery), *abrogated on other grounds by, Kersey v. Hatch*, 2010-NMSC-020, ¶¶ 9, 17, 148 N.M. 381, 237 P.3d 683; *State v. Serrato*, 2021-NMCA-027, ¶¶ 13, 21, 493 P.3d 383 (examining kidnapping and enticement of a child before proceeding to examine kidnapping and Criminal Sexual Contact of a Minor); *State v. Reed*, 2022-NMCA-025, ¶¶ 19, 23, 28, 510 P.3d 1261 (applying the same structure).

{11} The Court of Appeals did not cite any authority to support its approach, and it vacated Defendant's aggravated battery conviction without explicitly considering whether aggravated battery was subsumed by the kidnapping conviction. As a result, we agree with the State that the Court of Appeals' analysis is flawed because the Court of Appeals vacated a conviction without addressing whether that conviction violated double jeopardy by conflicting with the sole remaining conviction. Indeed, double jeopardy only prevents a defendant from being "twice put in jeopardy" for the same offense, and a defendant is not twice put in jeopardy if the conviction (here, aggravated battery) only conflicts with a vacated offense. U.S. Const. amend. V; N.M. Const. art. II, § 15.

{12} Finally, even though the Court of Appeals did not assess whether kidnapping subsumed aggravated battery, we clarify that it likewise would have been improper for the Court of Appeals to automatically "reinstate[] the aggravated battery conviction" after vacating the CSP II conviction, as the State argues. Rather, the Court of Appeals should have proceeded to consider whether aggravated battery conflicted with the sole remaining charge—kidnapping. And, because double jeopardy is a question of law that is squarely before this Court, we proceed with a complete double jeopardy analysis.

## 2. Proper double-description analysis

{13} The State argues that the Court of Appeals erred by vacating Defendant's CSP II and aggravated battery charges. Double jeopardy "is a constitutional question of law" subject to de novo review. *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. "Among its protections, the double jeopardy clause protects a defendant against multiple punishments for the same offense." *State v. Gonzales*, 2007-NMSC-059, ¶¶ 10-11, 143 N.M. 25, 172 P.3d 162. Where, as here, a "defendant is charged with violation of multiple statutes for the same conduct" in what are referred to as double-description cases, we "must determine whether the [L]egislature intended to authorize multiple punishments for the same offense." *Id.* ¶ 11. The Court applies a two-step test in double-description cases to determine whether a defendant's rights were violated. *Sena*, 2020-NMSC-011, ¶ 45.

{14} The first step asks "whether the *conduct* underlying the offenses is unitary, i.e., whether the same conduct violates multiple statutes." *Id*. (emphasis added) (brackets, internal quotation marks, and citation omitted). We set out the factors to determine whether an act is unitary or distinct in *Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624.

{15} When, as here, a jury returns a guilty verdict based on a jury instruction with alternative bases for conviction, this Court applies the "*Foster* presumption" to

determine whether the conduct is unitary with the conduct underlying the other offense. *See Sena*, 2020-NMSC-011, ¶ 54. Because a jury is "'not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law,'" the *Foster* presumption provides "'that a conviction under a general verdict requires reversal if the jury is instructed on an alternative basis for the conviction that would result in double jeopardy, and the record does not disclose whether the jury relied on this legally inadequate alternative.'" *Kersey*, 2010-NMSC-020, ¶ 12 (quoting *Foster*, 1999-NMSC-007, ¶ 28). The genesis of the *Foster* presumption is derived from *State v. Olguin*, where we recognized that "a conviction under a general verdict must be reversed if one of the alternative bases of conviction is *legally inadequate*," but that United States Supreme Court precedent "does not require a guilty verdict to be set aside if an alternative basis of conviction is only *factually inadequate* to support a conviction." 1995-NMSC-077, ¶ 2, 120 N.M. 740, 906 P.2d 731 (emphasis added); *see Foster*, 1999-NMSC-007, ¶¶ 27-28 (relying on this principle in *Olguin* to establish the *Foster* presumption in the double jeopardy context).

{16}    In other words, if the *Herron* factors are the tools used to discern whether the conduct itself is unitary, the *Foster* presumption is the lens through which the Court views the *Herron* factors. *See State v. Phillips*, 2024-NMSC-009, ¶ 38, 548 P.3d 51

(explaining that the Court applies the "*Herron* factors in the double description analysis to determine whether a defendant's acts are unitary or distinct"). The *Foster* presumption provides guidance in discerning which legal theories to compare when the state relies on a general verdict with general jury instructions without presenting a clear legal theory for the conviction by general verdict. If the relevant conduct is unitary, we "proceed to the second part, which focuses on the statutes at issue to determine whether the [L]egislature intended to create separately punishable offenses." *Sena*, 2020-NMSC-011, ¶ 45 (internal quotation marks and citation omitted).

### 3. The State's theory is ascertained through its charging documents, jury instructions, and closing argument

{17}     To determine whether Defendant's double jeopardy rights were violated, we must understand the State's theory of the case as presented at trial. *See State v. Porter*, 2020-NMSC-020, ¶ 19, 476 P.3d 1201 (explaining that the Court will examine the charging documents and jury instructions and, if necessary, opening and closing arguments to ascertain what the state's theory is). Here, the Criminal Information charged Defendant with first-degree kidnapping, CSP II, and aggravated battery. New Mexico's kidnapping statute provides the state with a number of alternative bases if it wishes to elevate the kidnapping charge from a second-degree felony to a first-degree felony. *See* § 30-4-1(B). The alternatives

generally contemplate whether a victim was voluntarily freed in a safe place, whether the victim was physically injured, or whether a "sexual offense" was inflicted upon the victim. *Id.* The State's Criminal Information listed all three theories in the alternative, without specifying which theory it intended to pursue to support first-degree kidnapping: "[D]efendant did not voluntarily free [Victim] in a safe place *or* [D]efendant inflicted physical injury *or* a sexual offense." At trial, the State's kidnapping jury instructions similarly provided two of these alternatives for the jury to convict:

> 1. [Defendant] took, restrained or confined [Victim] by force by pulling her into the motel room or pulling her away from the window and choking her or holding her down on the mattress;
>
> 2. [Defendant] intended to inflict physical injury *or* a sexual offense on [Victim];
>
> 3. The restraint or confinement of [Victim] was not slight, inconsequential, or merely incidental to the commission of another crime;
>
> 4. [Defendant] inflicted physical injury upon [Victim] *or* the [D]efendant inflicted a sexual offense upon [Victim] during the course of the kidnapping;
>
> 5. This happened in New Mexico on or about the 1st day of July, 2019.

(Emphasis added.) The State's theory of kidnapping as presented to the jury through its closing was likewise open to multiple interpretations:

> [T]he first element is that [Defendant] took, restrained or confined our Victim . . . by pulling her into the motel room, which you heard

happened, pulling her away from the window, which you heard happened, choking her or holding her down on the mattress, which you heard that happened.

Number two, that [Defendant] had intended to inflict physical injury or a sexual offense on [Victim]. You heard her testify, that's exactly what happened.

Number three, that the restraint or confinement of our Victim, . . . it wasn't slight, inconsequential or merely incidental to the commission of another crime.

And four, that [Defendant] inflicted physical injury upon [Victim] *or* [Defendant] inflicted a sexual offense upon [Victim] during the course of the kidnapping. You heard her testimony, and you saw the DNA results, no question.

Put simply, the State presented myriad legal and factual alternatives to the jury and then, to establish each element of first-degree kidnapping, the State simply pointed to the entirety of the facts or testimony.

{18}   Moving to CSP II, the jury instructions provided:

1. [Defendant] caused [Victim] to engage in sexual intercourse;

2. [Defendant] caused the insertion of a penis into the vagina of [Victim] through the use of physical force or physical violence;

3. [Defendant's] acts resulted in bruising in the leg area, of the eye, and of the throat of [Victim];

4. This happened in New Mexico on or about the 1st day of July, 2019.

In closing, the State argued:

This is the criminal sexual penetration, and for these, the . . . elements are that the Defendant caused [Victim] to engage in sexual intercourse. You've heard testimony, and we have the DNA. Defendant caused the

insertion of a penis into the vagina of [Victim] for the use of physical force or physical violence. We saw the bruising, the marks, the strangulation, the black eye. The Defendant's act resulted in bruising in the leg area, of the eye and the throat of [Victim].

Finally, the aggravated battery instruction provided:

1. [Defendant] touched or applied force to [Victim] by striking her with his fists and strangling her;

2. [Defendant] intended to injure [Victim];

3. [Defendant] acted in a way that would likely result in death or great bodily harm to [Victim];

4. This happened in New Mexico on or about the 1st day of July, 2019.

In closing, the State provided the following with respect to aggravated battery:

[T]he . . . elements here were that the [D]efendant . . . applied force to [Victim] by striking her with his fist and strangling her. The [D]efendant intended to injure [Victim]. The [D]efendant acted in a way that would likely result in death or great bodily harm to [Victim].

Having outlined the State's presentation at trial, we proceed to consider whether Defendant's double jeopardy rights were violated when he was convicted of first-degree kidnapping and CSP II.

**4.      First-degree kidnapping and CSP II**

**a.      Unitary conduct**

{19}    With respect to whether Defendant's conviction of first-degree kidnapping subsumes his conviction of CSP II, the Court of Appeals' analysis is sound. To start, we agree that the conduct supporting the two offenses was unitary. *See Neal*, A-1-

CA-40205, mem. op. ¶¶ 13-14. The jury in this case was presented with two alternative bases for convicting Defendant of kidnapping. The jury instructions required the jury to conclude *either* that Defendant intended to and did inflict a physical injury *or* a sexual offense during the kidnapping. Because the jury returned a guilty verdict that contains alternative legal bases for conviction, we apply the *Foster* presumption to determine whether the conduct was unitary with another offense. *See Sena*, 2020-NMSC-011, ¶ 54. If *either* alternative basis is legally inadequate, we must reverse. *See Kersey*, 2010-NMSC-020, ¶ 12; *Foster*, 1999-NMSC-007, ¶ 28.

{20} In this case, the kidnapping sexual offense alternative and CSP II were necessarily based on the same conduct, rendering the latter conviction legally inadequate. The plain language of the kidnapping statute requires the infliction of a "sexual *offense*" for a first-degree felony, *see* § 30-4-1(A)(4) (emphasis added), and the Legislature has created an entire article statutorily identifying sexual offenses. *See* NMSA 1978, §§ 30-9-1 to -21 (1963, as amended through 2019); *see also State v. Autrey*, A-1-CA-38116, mem. op. ¶¶ 10, 14 (N.M. Ct. App. Apr. 12, 2022) (nonprecedential) (identifying cases recognizing that a separate sexual *offense* is required if the state wishes to pursue first-degree kidnapping on a theory of sexual offense). As the Court of Appeals recognized, "CSP II was the only sexual offense

defined for the jury and the jury's view of the legal term 'sexual offense' would necessarily have been limited to the same force and penetration that was defined by the CSP II instruction given by the district court." *Neal*, A-1-CA-40205, mem. op. ¶ 13.

{21} The State does little to contest whether CSP II is subsumed under a sexual offense theory of kidnapping, instead arguing there would be no violation if the Court adopted a new test for determining whether a double jeopardy violation occurred.[2] Indeed, on the unitary conduct prong of our double jeopardy analysis, the State agreed at oral argument that the elements of CSP II would be subsumed by kidnapping if the jury relied on a sexual offense, which was one of the two kidnapping theories the State presented to the jury. And the State does not identify a sexual offense distinct from the CSP II that would independently support

---

[2]The State further asserts that the Court of Appeals erred in failing to apply the *Herron* factors. We disagree. First, the Court of Appeals did not apply the *Herron* factors in the kidnapping and CSP II analysis because it concluded that the State presented no other sexual offense; that is, the Court of Appeals did not have two offenses to compare under *Herron*. And although, as addressed below, the Court of Appeals did not need to compare the lesser charges (CSP II and aggravated battery) against each other, it did analyze "indicia of distinctness" for these two crimes. *Neal*, A-1-CA-40205, mem. op. ¶ 9. It was not error for the Court of Appeals to examine indicia of distinctness without identifying the *Herron* factors by name; indeed, we applied the same approach in *Sena*, 2020-NMSC-011, ¶¶ 46, 50 (examining indicia of distinctness without mentioning the *Herron* factors by name).

kidnapping under a theory of sexual offense.[3] Put plainly, under the State's theory, CSP II is the only sexual offense in this case that supports kidnapping in the first-degree. *See State v. Simmons*, 2018-NMCA-015, ¶ 26, 409 P.3d 1030 ("In specifically analyzing whether the conduct underlying kidnapping and CSP II-felony convictions is unitary, . . . unitary conduct occurs when the prosecution bases its theory of kidnapping on the same force used to commit CSP II-felony even though there were alternative ways to charge the crime." (brackets, internal quotation marks, and citation omitted)). As a result, the conduct was unitary.

**b.     Legislative intent**

{22}     When conduct is unitary, we proceed to examine "the statutes at issue to determine whether the [L]egislature intended to create separately punishable offenses." *State v. Begaye*, 2023-NMSC-015, ¶ 13, 533 P.3d 1057 (internal quotation marks and citation omitted). The first step is always whether the statute itself authorizes multiple punishments; here, the kidnapping statute contains no such express authorization. *Id.* ¶ 21; § 30-4-1. As previously outlined, both the kidnapping

---

[3]On this point, we note that the record does contain other evidence of sexual conduct, but we are unable to consider this conduct as a separate basis to support a distinct sexual offense as the State never relied on it to charge a sexual offense. There is no way to discern whether the jury would have convicted on such a basis, and the parties do not present such an argument here. *See State v. Lorenzo*, 2024-NMSC-003, ¶ 11, 545 P.3d 1156 (explaining that the state is bound by its theory presented below).

statute and the jury instructions provide multiple legal alternatives. Under such a circumstance, we apply the modified *Blockburger* test to discern legislative intent. *Begaye*, 2023-NMSC-015, ¶ 22 (discussing *Blockburger v. United States*, 284 U.S. 299 (1932)). "The modified *Blockburger* analysis demands that we compare the elements of the offense, looking at the [s]tate's legal theory of how the statutes were violated. To ascertain the state's legal theory, this Court review[s] the statutory language, charging documents, and jury instructions used at trial." *Id*. ¶ 24 (internal quotation marks and citations omitted).

{23} The State's closing arguments, like the jury instructions, do not illuminate whether the State pursued a kidnapping conviction under a theory of physical injury *or* a sexual offense; nor do they clarify the factual alternatives contained within the instructions. *Id*. ¶ 24 (explaining that we will examine, in relevant part, closing arguments "to establish whether the same evidence supported a defendant's convictions under both statutes" when "the state's legal theory cannot be ascertained using the charging documents and jury instructions" (internal quotation marks and citation omitted)). For example, with respect to the second element (addressing intent to commit) and the fourth element (addressing actual infliction of a physical injury or sexual offense), the State asserted in closing:

Number two, that [Defendant] had intended to inflict physical injury *or* a sexual offense on [Victim]. You heard her testify, that's exactly what happened.

. . . .

And four, that [Defendant] inflicted physical injury upon [Victim] *or* [Defendant] inflicted a sexual offense upon [Victim] during the course of the kidnapping. You heard her testimony, and you saw the DNA results, no question.

Put simply, even after examining closing arguments, the State's theory did not specify whether it sought a kidnapping conviction based on physical injury or on a sexual offense; instead, the State provided the jury with both options.

{24} Remaining canons of construction likewise do not clearly indicate that the Legislature intended to punish CSP II and kidnapping separately when the state limits its argument to a single sexual offense. *See Montoya*, 2013-NMSC-020, ¶ 32 (identifying other "traditional means of determining legislative intent: the language, history, and subject of the statutes," including "identify[ing] the particular evil sought to be addressed by each offense" (internal quotation marks and citation omitted)). For example, to the extent any intent can be gleaned from the language, structure, and quantum of punishment, the Legislature seems to have established a relatively low bar to elevate kidnapping from a second- to a first-degree felony. The state merely has to prove *any* physical injury, or *any* sexual offense. Although the State charged and relied upon a very serious sexual offense in this case (CSP II) to

prove first-degree kidnapping, in another case the state could rely upon criminal sexual contact, which is a much easier crime to prove. Defendant acknowledges as much, noting that the State's ability to combine a low-level sexual offense to elevate kidnapping from a nine-year sentence to "18 years of *mandatory* imprisonment" suggests that the Legislature intended for the sexual offense to serve essentially as a base offense rather than an independent crime in cases where only one sexual offense is presented. The same could be said of the physical injury, where the quantum of punishment for second-degree kidnapping and physical injury (if charged as a separate offense such as simple battery) would be significantly less than eighteen years of mandatory imprisonment.

{25} With respect to the particular evil sought to be addressed by each offense, the State relies upon *State v. McGuire*, 1990-NMSC-067, ¶ 14, 110 N.M. 304, 795 P.2d 996, which provides that "criminal sexual penetration statutes and kidnapping statutes protect different social norms." *McGuire*, however, operated under a previous version of the kidnapping statute, which did not require that the state prove a sexual offense, instead requiring the infliction of "great bodily harm." *See* NMSA 1978, § 30-4-1(B) (1973, amended 2003); 1973 N.M. Laws, ch. 109, § 1. As a result, we cannot clearly discern that the social evils post-statutory amendment remain different in a case, as here, where the State presented first-degree kidnapping (under

one alternative) on the basis of a sexual offense. That is, under the circumstances of this case, the Legislature specifically *incorporated* a sexual offense within the structure of the kidnapping statute, which allows for the additional punishment for the social evil of a sexual offense as part of the kidnapping conviction. Indeed, the finding of a sexual offense is what doubles the quantum of punishment for kidnapping from nine years to eighteen. *See* § 30-4-1(B) (providing the distinction between first- and second-degree kidnapping); NMSA 1978, § 31-18-15(A) (stating that the basic sentence for a first-degree felony is eighteen years, whereas the basic sentence for a second-degree felony is nine years).

{26} The State suggests the Legislature approved of multiple punishments for kidnapping and the underlying sexual offense because, in amending the kidnapping statute, it intended to increase penalties for sex offenders, not decrease them. This is faulty reasoning. Even if the Legislature did intend to increase penalties for sex offenders, such a conclusion does not necessarily support that it specifically intended to authorize multiple punishments, and it certainly did not include any express language to that effect. The Legislature amended the language of the kidnapping statute so that the state no longer had to establish great bodily harm to obtain a first-degree kidnapping conviction. *Compare* § 30-4-l(B) (1973), *with* § 30-4-l(B) (2003). In that way, for kidnapping cases involving sexual offenses, the Legislature made it

easier to obtain a first-degree conviction because the state did not need to prove a sexual offense that resulted in great bodily harm—an onerous standard that would not capture many sexual offenses. By amending the statute, the Legislature allowed the state to obtain first-degree kidnapping convictions in cases where sexual offenses occurred, but there was no evidence of great bodily harm. This reading satisfies any apparent legislative intent to increase penalties for sex offenders *without* authorizing multiple punishments.

{27}     The State separately suggests this analysis would result in absurdity because it would necessarily "make it impossible for a defendant to be convicted of both first-degree kidnapping and a sexual offense." This argument misunderstands the Court's precedent. A conviction for both crimes is viable when the state is able to prove first-degree kidnapping under a theory of physical violence and CSP II as a separate sexual offense; or, when the evidence supports two sexual offenses and the state presents a theory that clearly uses one sexual offense as the predicate for first-degree kidnapping, and the other as a standalone offense of CSP II (or other sexual offense). Indeed, as explained below, the facts of this case, if charged more precisely, might have supported both convictions.

{28}     In sum, even after examining all of the canons of construction to support multiple punishments in this case, ambiguity remains. Such ambiguity implicates the

rule of lenity and supports a double jeopardy violation in this case. *Montoya*, 2013-NMSC-020, ¶ 51. As in *Montoya*, however, the ambiguity that results is simply a consequence of the State's charging decisions. *Id.* ¶ 52 (applying the rule of lenity in part because the state chose "to impose double punishment for the killing of a single victim"). To illustrate, we offer one theory the State could have pursued to avoid double jeopardy. The State could have tried the kidnapping under a physical injury theory without providing a sexual assault alternative to the jury. Victim was brutally battered; she had a black eye and goose eggs on her head. She had neck injuries from the strangulation. These physical injuries occurred separate and apart from the sexual offense and were more than sufficient for a jury to convict Defendant of kidnapping in the first degree. If the State had pursued kidnapping under a theory of physical injury, it could have pursued CSP II as a standalone sexual offense.[4] The Court of Appeals recognized this, stating that the kidnapping "physical injury

---

[4]If the State wished to obtain a conviction on aggravated battery as well, it could have presented that theory to the jury. But, the State would have had to clearly indicate which physical injuries it was relying on for kidnapping, and which it was independently relying on for aggravated battery. The State could have done so in the charging instruments, jury instructions, or closing argument. *See Porter*, 2020-NMSC-020, ¶ 19 (explaining that we examine charging documents and jury instructions and, if necessary, opening and closing arguments to discern the state's theory).

alternative by itself does not create a double jeopardy problem" with respect to CSP II. *Neal*, A-1-CA-40205, mem. op. ¶ 13.

{29}    There were undoubtedly other ways to avoid a double jeopardy violation in this case. Indeed, we have repeatedly offered guidance about how the state might try a case in a manner that does not implicate double jeopardy. *See State v. Lorenzo*, 2024-NMSC-003, ¶ 11, 545 P.3d 1156 ("We note that, had the [s]tate opted for a different presentation at trial, it is possible that the jury could have decided that different uses of force satisfied the elements of each crime. For example . . ."). *Lorenzo* was not the first time we have done so. *See, e.g.*, *Porter*, 2020-NMSC-020, ¶ 14 (explaining that one crime may have been considered completed before the other began if the state had prosecuted the case differently). The Court of Appeals expressed the same sentiment in this case and elsewhere. *Neal*, A-l-CA-40205, mem. op. ¶¶ 13-15, 17 ("We emphasize that our double jeopardy holding in the present case is the result of the necessary inferences arising from the jury instructions and the State's presentation to the jury. The same facts may have resulted in a different constellation of charges or arguments that may have supported separate crimes."); *State v. Dent*, A-1-CA-40313, mem. op. ¶¶ 23, 28 (N.M. Ct. App. Sept. 19, 2024) (nonprecedential), *cert. denied*, 2024-NMCERT-011 (S-1-SC-40619, Nov. 14, 2024) (explaining that vacating the defendant's CSP II conviction "is required given

the [s]tate's election to pursue the kidnapping charge on alternative theories," when only presenting "one sexual offense" to the jury). Alternatively, the State could have utilized a special verdict form to affirmatively establish the theory the jury selected.

{30} It is not lost on us that trials are no simple endeavor and that abstract theorizing is unhelpful for the State's case on appeal. *See Lorenzo*, 2024-NMSC-003, ¶ 11 (explaining that the state is bound by its theory presented below); *id.* ("The [s]tate may not now argue in the abstract about what it could have asked the jury to decide." Nevertheless, it is necessary to establish that the State's double jeopardy concerns in this case do not arise from this Court's allegedly unwieldy double jeopardy test, addressed below, but rather from the State's trial strategy.

**5.      First-degree kidnapping and aggravated battery**

{31} We next turn to the analysis that the Court of Appeals omitted. The first step of the test is, again, whether the conduct was unitary. Like the kidnapping and CSP II analysis above, we must apply the *Foster* presumption because the kidnapping jury instruction allowed the jury to conclude that Defendant intended to and did inflict a physical injury *or* a sexual offense during the kidnapping. Because the record in this case does not disclose which alternative the jury relied upon, or even if some jurors relied upon one theory and some on another, the *Foster* presumption requires reversal if either alternative basis is legally inadequate. *See Kersey*, 2010-

NMSC-020, ¶ 12; *Foster*, 1999-NMSC-007, ¶ 28; *State v. Salazar*, 1997-NMSC-044, ¶¶ 32-42, 123 N.M. 778, 945 P.2d 996 (holding that jury unanimity is not required when alternative theories are presented to the jury). However, "*Foster* does not require a further presumption that the same conduct was then relied upon by the jury in convicting a defendant of each crime—particularly when the record indicates distinct crimes were committed. Thus, the *Foster* presumption can be rebutted by evidence that each crime was completed before the other crime occurred." *Phillips*, 2024-NMSC-009, ¶ 40 (text only)[5] (citation omitted).

{32} We examine kidnapping under the physical injury alternative, as the sexual offense alternative likely does not implicate double jeopardy when compared with aggravated battery; that is, aggravated battery can plainly be satisfied in this case without proving a sexual offense. But, unlike the kidnapping and the CSP II charge where the State only presented evidence of one sexual offense, the evidence supports multiple physical injuries. We therefore examine the six *Herron* factors through the lens of whether separate physical injuries or harm establish "whether a defendant's acts are unitary or distinct." *Phillips*, 2024-NMSC-009, ¶ 38. As *Phillips* outlines,

---

[5]"(Text only)" indicates the omission of nonessential punctuation marks—including internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

the *Herron* factors consider: "(1) temporal proximity of the acts, (2) location of the victim during each act, (3) the existence of intervening events, (4) the sequencing of the acts, (5) the defendant's intent as evidenced by his conduct and utterances, and (6) the number of victims." *Phillips*, 2024-NMSC-009, ¶ 12; *see Herron*, 1991-NMSC-012, ¶ 15. We recently reaffirmed that "[n]one of these factors alone is a panacea," instead recognizing that time and space may be determinative in some cases, but not in others. *Phillips*, 2024-NMSC-009, ¶ 13 (internal quotation marks and citation omitted). Therefore, we reiterated, an appellate court should consider every factor. *Id.* We examine the *Herron* factors through consideration of "the elements of the charged offenses, the facts presented at trial, and the instructions given to the jury." *Phillips*, 2024-NMSC-009, ¶ 38 (internal quotation marks and citation omitted).

{33} The aggravated battery instructions in this case required the jury to conclude that Defendant "acted in a way that would likely result in death or great bodily harm." Element one of the jury instruction was defined in a fairly specific and confined manner, only identifying two types of force supporting an injury: Defendant "touched or applied force to [Victim] by striking her with his fists *and* strangling her." Given how the aggravated battery instruction is crafted, two conclusions result. First, the instruction required both striking *and* strangling to

satisfy the first element. Therefore, the crime of aggravated battery could not have been complete until the jury found that Victim was strangled, which the evidence suggests took place after Defendant struck her repeatedly. *See State v. Torres*, 2018-NMSC-013, ¶ 19, 413 P.3d 467 ("When determining whether a defendant's conduct is unitary, we have looked for an identifiable point at which one of the charged crimes had been completed and the other not yet committed." (internal quotation marks and citation omitted)). Second, because the State *only* relied upon the striking and strangling for aggravated battery, the physical injury for kidnapping had to result from the only physical injury that occurred aside from the striking and strangling—the injuries resulting from the sexual assault.

{34} Examining the *Herron* factors through these instructions and evidence, the first factor considers temporal proximity between the two crimes. Our reasoning in *Phillips* on this factor is instructive. In *Phillips*, the Court applied the *Herron* factors to examine whether a defendant's convictions for aggravated battery with a handgun and manslaughter were sufficiently distinct. *Phillips*, 2024-NMSC-009, ¶¶ 46-47. We held the evidence supported a conclusion that "the battery was completed before the manslaughter was committed" in relevant part because the "two acts were separated by approximately eighteen seconds" and there was an intervening event where the defendant left the room and returned with a different gun. *Id.* ¶ 45. In the

unit-of-prosecution analysis, the *Phillips* Court applied the same *Herron* factors to conclude that multiple acts of battery were also distinct. *Id.* ¶ 47. In reaching its conclusion, the Court noted the interval of time between the batteries, recognizing that "there was an approximate two-minute break after both the first and second of the three successive batteries." *Id.* ¶ 32.

{35}     Our unit-of-prosecution analysis in *Phillips* is relevant here where we are confronted with the question of whether the physical harm between two crimes was distinct under *Herron*, a question that is substantively similar to examining whether there were two batteries. *Id.* ¶ 13 (reaffirming that "we are doing a substantially similar analysis when we conduct a unitary conduct inquiry in double description cases as when we conduct a unit-of-prosecution inquiry" (internal quotation marks and citation omitted)). Defendant acknowledges, and the State does not dispute, that the crimes in this case occurred over the span of approximately "10-22 minutes." However, because there is little evidence identifying the precise amount of time that elapsed between the aggravated battery and the physical injury during the sexual assault that supported the kidnapping, this factor is less revealing than the remaining factors. Nevertheless, given the evidence discussed below, we note it is unlikely the amount of time between the crimes here was less than the eighteen seconds in *Phillips*.

{36}     The second *Herron* factor is the location of the victim. *See* 1991-NMSC-012, ¶ 15 ("[M]ovement or repositioning of the victim between [acts] tends to show separate offenses."). Here, Victim testified that after the strangulation (the physical injury for purposes of the aggravated battery), which took place near the window of the motel room, Defendant moved her to a mattress in the same room. This movement weighs in favor of separate offenses. *See Phillips*, 2024-NMSC-009, ¶ 30 (recognizing that movement within the same room may support distinct conduct when a victim is confined by circumstances of the assault).

{37}     The third and fourth factors assess the existence of intervening events and the sequencing of the crimes. *Herron*, 1991-NMSC-012, ¶ 15. We have previously found distinct conduct based on a struggle between the two crimes. In *Phillips*, this Court relied upon a brief struggle over a baseball bat as evidence of an intervening event between the two batteries that supported distinct conduct. 2024-NMSC-009, ¶ 23. Likewise, this Court has relied upon circumstantial evidence of a struggle to support that intervening conduct bolstered the Court's conclusion of distinct offenses. *State v. DeGraff*, 2006-NMSC-011, ¶ 30, 139 N.M. 211, 131 P.3d 161 ("The fact[] that several weapons were used and that strands of [the d]efendant's hair were found in the victim's hands indicate an intervening struggle during which the victim defended himself. We conclude that the conduct in this case is not unitary,

but consists of at least two distinct acts: the initial attack, completing the crime of aggravated burglary, and the later murder.").

{38} Here, the evidence does not appear to indicate a struggle between the aggravated battery and kidnapping. But, critically, like *DeGraff*, there is evidence of intervening conduct. During the period between the initial striking and strangulation and the later sexual battery, Defendant said "I'm sorry I had to do that, but I really like you and it's my birthday." Defendant began to take Victim's clothes off. Victim was saying "no" and began to cry. Defendant then took his clothes off; before he penetrated Victim, she asked Defendant if he had a condom. Therefore, while the type of intervening evidence is qualitatively different than the struggles in *Phillips* and *DeGraff*, the legal effect is the same: the crimes were separated by intervening events.

{39} The sequencing and intervening events evidence in this case are intertwined with the fifth factor—a defendant's intent as established by his conduct and utterances. Of the six, this factor most strongly suggests that two distinct crimes occurred. First, Defendant's statement, "I'm sorry I *had* to do *that*, but I really like you and it's my birthday," indicates conduct in the past-tense, suggesting Defendant recognized that one series of events ended and another one was about to begin. Viewed through the lens of the charged crimes, Defendant's statement recognized

that the first crime, aggravated battery, which was used as a means to subdue Victim, was complete. *See, e.g., DeGraff*, 2006-NMSC-011, ¶ 30 (explaining that "the initial use of force completed the crime of aggravated burglary," just as the initial use of force through striking and strangulation completed the crime of aggravated battery in this case). Second and distinct from the temporal aspect, Defendant's statement serves as evidence of a shift in intent or the nature of his actions. *See Phillips*, 2024-NMSC-009, ¶ 25 (relying upon a "clear change in intent between each attack"); *State v. Demongey*, 2008-NMCA-066, ¶ 15, 144 N.M. 333, 187 P.3d 679 (concluding the conduct was unitary in part because the Court saw "no indication of a change in [the d]efendant's intent or the nature of his actions"). In *Phillips*, the shift was clear as the defendant affirmatively expressed that he did not intend to kill anyone at the start of the first crime when he hit the victim with a bat; during the attack, however, he decided to "immobilize or kill" the victim. 2024-NMSC-009, ¶ 25. Nevertheless, Defendant's statement in this case likewise indicates a change in Defendant's intent *and* the nature of his acts from subduing or immobilizing, "I'm sorry I *had to do that*," to impending sexual battery, "I like you and it's my birthday." Finally, as for the last factor, there is only one victim in this case, weighing in favor of unitary conduct.

{40}     In sum, not every factor clearly weighs in favor of distinct offenses. But that is not required. In *Phillips*, for example, we rejected the defendant's request for a rebuttable presumption that, "[w]hen there is an incident that occurs in a short time in a single place, the [s]tate should generally be limited to proving one purely assaultive crime for each victim." 2024-NMSC-009, ¶¶ 12-13. Instead, the *Phillips* Court affirmed multiple convictions because it concluded that four of the six factors weighed in favor of the conclusion that the "two attacks were distinct." *Id.* ¶ 27. The amount of time and number of victims are the two factors that arguably weigh in favor of only one offense in this case. And the evidence of distinct conduct in this case is at the very least equal to, if not greater in degree, than the amount of evidence in *Herron* and *Foster*. *See Herron*, 1991-NMSC-012, ¶¶ 19-20 (affirming multiple convictions seemingly based only on the brief repositioning of the victim and penetration of a different orifice: "Two offenses were committed upon returning to the living room—one digital penetration of the vagina and, after repositioning the victim, one penile penetration of the vagina. Those acts were sufficiently distinct"); *accord Foster*, 1999-NMSC-007, ¶¶ 31-34 (concluding that the convictions for aggravated kidnapping and murder that took place in the span of a few minutes were distinct because the defendant's "use of the glass ashtray to complete the crime of

aggravated kidnapping [was] distinct from his use of the extension cord to strangle the victim to death").

{41} On balance, we hold that the *Herron* factors support a conclusion that Defendant committed two distinct crimes—both under a theory of physical injury. Viewed through this lens, the jury would have had to find that Defendant committed aggravated battery with the intent to injure through striking and strangling Victim and that he did so "in a way that would likely result in death or great bodily harm." Once he struck and strangled Victim with this intent, all of the elements were satisfied and the aggravated battery was complete. The movement, sequencing, intervening events, and Defendant's statements indicate a brief separation before Defendant initiated the next physical injury for purposes of the kidnapping conviction. While we recognize that the State was vague in its crafting of the kidnapping instruction, it provided a theory that encompasses such a series of events. Under the first kidnapping element, the jury had to find that "[D]efendant took, restrained or confined [Victim] by force by pulling her into the motel room or pulling her away from the window and choking her *or holding her down on the mattress*." It is this last alternative that provided the jury with a legally and factually viable theory to convict Defendant for both kidnapping and aggravated battery.

**B.     The State's Request for a New Double Jeopardy Test**

{42}     The State allocates the vast majority of its briefs to assert that this Court should overrule precedent and adopt a new approach to double jeopardy. Specifically, the State requests that the Court overrule *Swick* and *Montoya* and adopt a version of the "same" elements approach. The State alleges numerous flaws with the current approach: it is "complex, fact-intensive, and produces unjust results." "It places too much emphasis on a complex unitary conduct analysis, which is beset by numerous factors and presumptions." The current "standard for finding unitary conduct is too low." The second step, often referred to as the modified *Blockburger* test, is redundant of the unitary conduct analysis and "fails to accurately gauge legislative intent." Finally, the entire test fails to consider "highly-relevant indicia of legislative intent."[6]

{43}     The State argues that we should adopt a different test because a new test would allow "Defendant [to] be punished for the three distinct crimes he committed." As we have described, however, the State could have obtained viable convictions under

---

[6]Defendant also requests a new rule in his answer brief, asserting that this Court should "extend *State v. Frazier*, 2007-NMSC-032, 142 N.M. 120, [164 P.3d 1,] to the kidnapping statute," in effect applying the felony-murder rule to every kidnapping case. As both parties recognize, the Court of Appeals has rejected this argument on more than one occasion. As a result, Defendant was aware of this precedent and could have raised such a request in his own petition for certiorari. Failing to do so, we do not address it further.

the current test if it had "opted for a different presentation at trial." *Lorenzo*, 2024-NMSC-003, ¶ 11. This fatally undermines the State's sole basis for overturning precedent—that our approach is so unworkable that it has become intolerable. Nor does the State argue any of the remaining factors for overturning precedent. *See, e.g.*, *Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003-NMSC-011, ¶ 7, 133 N.M. 661, 68 P.3d 901 (identifying four questions that "*must be considered before* overturning precedent" (emphasis added) (internal quotation marks and citation omitted)). As a result, we conclude the State has failed to meet the substantial burden of demonstrating why the Court's precedent is so intolerable that it has become unworkable such that we should overrule precedent. *See N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 11, 127 N.M. 654, 986 P.2d 450 ("Stare decisis . . . lies at the very core of the judicial process of interpreting and announcing law. It promotes very important principles in the maintenance of a sound judicial system: 1) stability of the law, 2) fairness in assuring that like cases are treated similarly, and 3) judicial economy." (internal quotation marks and citation omitted)).[7]

---

[7]The State's more specific arguments, such as the assertion that the "standard for finding unitary conduct is too low," are likewise undercut by this Court's precedent. *See, e.g.*, *Sena*, 2020-NMSC-011, ¶ 56 (upholding multiple convictions because the conduct was not unitary); *Phillips*, 2024-NMSC-009, ¶¶ 26-32

{44} Furthermore, as Defendant recognizes, the prosecution controls how to structure each count and craft a trial strategy accordingly. And we reiterate that the Legislature is free at any time to authorize multiple punishments for a particular crime or series of crimes. Absent such express language, we conclude the current test honors the mandate of the double jeopardy clause contained within both the United States and New Mexico Constitutions—that no person shall "be twice put in jeopardy" for the same offense. U.S. Const. amend. V; N.M. Const. art. II, § 15.

## III.   CONCLUSION

{45} For the reasons outlined herein, we affirm in part and reverse in part. We affirm the Court of Appeals' conclusion that double jeopardy bars Defendant's conviction for CSP II because the State relied upon that lone sexual offense to obtain a conviction for first-degree kidnapping. However, the Court of Appeals erred in also vacating Defendant's aggravated battery conviction without analyzing whether it conflicted with the kidnapping charge that remained. Having conducted a complete analysis, we conclude that sufficient indicia of distinctness support upholding Defendant's aggravated battery conviction apart from kidnapping. Finally, we

---

(upholding multiple convictions on grounds that the conduct was not unitary); *State v. Cardenas*, 2025-NMSC-020, ¶ 58, 572 P.3d 958 (affirming in relevant part because "the solicitation and conspiracy convictions were based on entirely distinct conduct").

conclude the State failed to establish that our current double jeopardy approach is so unworkable as to be intolerable—especially in an area of law "for which there is no simple test." *Montoya*, 2013-NMSC-020, ¶ 33. We remand to the district court for further proceedings consistent with this opinion.

{46}     **IT IS SO ORDERED.**

 

_____

**JULIE J. VARGAS, Justice**

**WE CONCUR:**

 

_____

**DAVID K. THOMSON, Chief Justice**

 

_____

**MICHAEL E. VIGIL, Justice**

 

_____

**C. SHANNON BACON, Justice**

 

_____

**BRIANA H. ZAMORA, Justice**